The judgment appealed from should, therefore, be affirmed.

All concur.

Judgment affirmed.

---

JAMES J. O'DEA, Appellant, *v.* MARY O'DEA, Respondent.

In July, 1844, defendant, who was then residing in Toronto, Canada, married K., in this State and lived with him here as his wife until January, 1860, when she left him and returned to Toronto, where she continued to reside until 1865. K. removed to, and became a resident of Ohio, and in 1864, after a residence there of more than a year, he commenced an action in that State for divorce on the ground that defendant had been willfully absent from him for more than three years. A copy of the petition and summons were mailed to defendant at Toronto, and were received by her. Notice of the filing of the petition, the purpose thereof, the time for hearing, and that depositions would be taken at Toronto at a time and place named, was duly published. Depositions were taken in pursuance of said notice, defendant being present but taking no part personally or by counsel. No other service was made upon defendant; the service made was, under the laws of Ohio, a legal service. A divorce was granted in 1864. By the terms of the decree, each party was "restored to the rights and privileges of unmarried persons." Defendant afterward married the plaintiff, and they lived together as husband and wife until 1880. Plaintiff, prior to his marriage, knew of defendant's former marriage and of the divorce proceedings, but not of the particular circumstances under which the decree of divorce was obtained. At the time of such marriage

K. was and is still living in Ohio. In an action to have the marriage between the parties annulled, on the ground that defendant, at the time of such marriage, had a husband living, and that her former marriage was still in full force, *held* (MILLER, DANFORTH and FINCH, JJ., dissenting), that the Ohio court acquired no jurisdiction over the defendant and the decree of divorce was, as to her, inoperative and void; that, therefore, the marriage between her and plaintiff was illegal and void,

Argued October 12, 1885 ; decided December 22, 1885.)

APPEAL from oraer of the General Term of the Supreme Court, in the fourth judicial department, made the second Tuesday of June, 1883, which reversed a judgment in favor of plaintiff entered upon the report of a referee.

The complaint in this action alleges and it was proved that the parties intermarried in this State on the 30th day of August, 1866, and from that time until shortly before the commencement of the action in 1880, lived and cohabited together as man and wife. The husband sued to have the marriage contract declared void and the marriage annulled upon the ground that at the time it took place a former husband of the defendant was living and the marriage with him was then in full force. The defendant by answer denied all the criminatory allegations.

The referee before whom the issue was tried found upon evidence sufficient, if admissible, that in July, 1844, the defendant resided in, and always before that time had been a resident of, Toronto, Canada West, but at that date was married in Lewiston, in this State, to one K. and lived with him as his wife until January, 1860, when she left him and returned to Toronto, where she continued to reside until 1865, and he removed from this State "to, and became a resident of, Cuyahoga county in the State of Ohio," where in March, 1864, and after a residence of more than one year, he commenced an action in the Court of Common Pleas of that county, "for the purpose of obtaining a divorce from the defendant in this action, for the reason, as stated in the petition then filed, that she had been willfully absent from him for three years or more. That a copy of this petition and of the summons issued thereupon were on

the 24th of March, 1864, sent, by mail, to the defendant at Toronto, where she then resided, and were received by her soon after, that by said summons she was required to answer in the action by the 9th day of April, 1864. That a notice of the filing of the petition, and of the purpose thereof, and that said petition would be presented for hearing at the May Term of said court of Common Pleas, and that depositions would be taken in Toronto at a time and place mentioned, were duly published in a newspaper in said Cuyahoga county. "That on the 20th day of April, 1864, depositions in said action were taken in pursuance of said notice. That the defendant was present when such depositions were taken, but took no part personally, or by counsel, at the taking of the same. That no other service of the process or proceedings in the action was made upon the defendant than is above stated; and that such service so made was, according to the Laws of the State of Ohio, a legal service upon the defendant, but that she never in any way appeared in said action."

It also appeared that on the 24th day of May, 1864, the Ohio court, upon the proofs, found the facts stated in the petition to be true, that the defendant was willfully absent from the petitioner without cause, for more than three years anterior to the filing of the petition, and had at all times remained so willfully absent from him, and therefore it was decreed that the marriage contract alleged in petition, and heretofore existing between the parties, be and the same was " declared annulled, cancelled and void, and no longer binding on the parties," and each was "restored to the rights and privileges of unmarried persons." The referee further found that the defendant afterward married the plaintiff and lived with him as above stated. It appeared from uncontradicted evidence that plaintiff knew the person he was about to marry had been a wife and was not a widow; that he also knew of the divorce proceeding during its pendency, and in 1864 was informed of the result, but the referee finds that "he had no knowledge of the particular manner or circumstances under which the divorce was obtained," and that when

the plaintiff and defendant married, K. was living in Ohio and is still living there.

· As conclusions of law the learned referee found that the Court " of Common Pleas of Cuyahoga county, Ohio, never acquired jurisdiction over the person of the defendant in the proceeding prosecuted in that court, and therefore that the decree made and entered in it was without jurisdiction and so void and of no effect." He directed judgment in favor of the plaintiff, declaring his marriage with the defendant to be illegal and void.

*George J. Greenfield,* for appellant. A suit to dissolve a marriage is a proceeding *in personam* and not *in rem.* (*People* v. *Baker*, 76 N. Y. 78; *Hunt* v. *Hunt*, 72 id. 217.) To sustain a foreign divorce, jurisdiction of the person of the defendant, not a resident of that State, must be acquired, as in any other action, by the personal service of the summons within the territorial jurisdiction of the court, or by voluntary appearance. (*Borden* v. *Fitch*, 15 Johns. 12; *Shumway* v. *Stillman*, 6 Wend. 447; *Bradshaw* v. *Heath*, 13 id. 407; *Vischer* v. *Vischer*, 12 Barb. 640; *McGiffert* v. *McGiffert*, 31 id. 69, *Kerr* v. *Kerr*, 41 N. Y. 272; *Hoffman* v. *Hoffman*, 46 id. 30; *Todd* v. *Kerr*, 42 Barb. 317; *Moe* v. *Moe*, 2 T. & C. 647; *Phelps* v. *Baker*, 60 Barb. 107; *People* v. *Baker*, 76 N. Y. 78.) The alleged desertion of her husband, Kollmyer, by the defendant, occurred in this State, before Kollmyer removed to Ohio, and acquired a domicile there. Such desertion was not a valid ground of divorce in this State, and jurisdiction was not acquired by the Ohio court. (*Holmes* v. *Holmes*, 4 Lans. 388; *Moe* v. *Moe*, 2 T. & C. 647; 3 Am. L. Reg. [N. S.] 193.) The actual notice of the Ohio suit, and the presence of the defendant at the taking of testimony in Toronto, did not confer jurisdiction on the Ohio court. (*Shepard* v. *Wright*, 60 How. 512; *Holmes* v. *Holmes*, 4 Lans. 388; *Dunn* v. *Dunn*, 4 Paige, 425; *Shetzler* v. *Shetzler*, 2 Ed. Ch. 584; *Fenton* v. *Garlick*, 8 Johns. 94; *Phelps* v. *Baker*, 60 Barb. 107; *Jones* v. *Jones*, 36 Hun, 414; *Ewer* v. *Coffin*, 1 Cush. 23; Whart. Confl. of Law, § 649 ; Confl. of Law affecting marriage

and divorce by Judge REDFIELD, 3 Am. L. Reg. (N. S.) 210;
*Irby* v. *Wilson*, 1 Dev. and Bat. Eq. 568; *Prosser* v. *Warner*,
47 Vt. 667; *Reed* v. *Reed*, 52 Mich. 117; *Wetherbe* v.
*Wetherbe*, 20 Wis. 499; *Lyon* v. *Lyon*, 2 Gray, 367; *Garner*
v. *Garner*, 56 Md. 127; *Pennoyer* v. *Neff*, 95 U. S. 714;
*Price* v. *Hickok*, 39 Vt. 292; *Bischoff* v. *Withen*, 9 Wall.
812; *Flower* v. *Parker*, 3 Mason, 251; *Reel* v. *Elder*, 62
Penn. 308; *Hart* v. *Samson*, 110 U. S. 151; *Penn* v. *Hay-
ward*, 14 Ohio St., 302; *Williams* v. *Wilton*, 28 id. 451.) Mere
acquiescence in a void decree does not render it binding on the
defendant. (*Holmes* v. *Holmes*, 4 Lans. 388; *Todd* v. *Kerr*,
42 Barb. 317; *Jones* v. *Jones*, 36 Hun, 414.) Even if the
Canada law should come in question, it cannot, in the absence
of evidence, be presumed that it is contrary to the law of this
State or the principles of natural justice. (*Shepard* v.
*Wright*, 60 How. 512.) The defendant was not subject to the
jurisdiction of the Ohio court. (*Mellen* v. *Mellen*, 10 Abb.
N. C. 331, 333; *Hunt* v. *Hunt*, 72 N. Y. 243; *Cheever* v.
*Wilson*, 9 Wall. 108; Story's Confl. of Laws (8th ed.), 311;
*Dutcher* v. *Dutcher*, 39 Wis. 651; *Schonwald* v. *Schonwald*,
2 Jones Eq. (N. C.) 367; *Colvin* v. *Reed*, 55 Penn. St. 375;
*Reel* v. *Elder*, 62 id. 308; *Irby* v. *Wilson*, 1 Dev. and
Bat. Eq. (N. C.) 568; *Briggs* v. *Briggs*, L. R., 5 P. D. 163;
*Harvey* v. *Farnie*, 6 id. 35; *Pitt* v. *Pitt*, 4 Macq. 640.) The
plaintiff has a standing in court, and is not estopped by
reason of his knowledge of the divorce decree. (*Kinnier* v.
*Kinnier*, 45 N. Y. 543; *Singer* v. *Singer*, 41 Barb. 139;
*Wilmon* v. *Flack*, 96 N. Y. 520; *Thorp* v. *Thorp*, 90 N. Y.
602; *Smith* v. *Smith*, 79 Mass. 210; *Holmes* v. *Holmes*, 4
Lans. 392; *Todd* v. *Kerr*, 42 Barb. 317; *Collins* v. *Collins*,
80 N. Y. 1; *Mann* v. *Mann*, 75 id. 614.)

*DeLancey Crittenden* for respondent. As a basis for relief
the plaintiff in an action to annul a marriage, upon the ground
that the former husband was living, must establish the fact that
the former marriage was in force at the time of the commence-
ment of his action. (Code of Civ. Pro., § 1743; *Roberts* v. *O.*

*& L. C. R. R. Co.*, 34 Hun, 324; *Moore* v. *Hegeman*, 92 N. Y. 521.) The court in Ohio, or in this State, were Kollmyer to seek relief, would not permit him to question that divorce. (*Kinnier* v. *Kinnier*, 45 N. Y. 535; *Nichols* v. *Nichols*, 25 N. J. Eq. 60; *Elliott* v. *Wohlfrom*, 6 So. Law Rev. [N. S.] 618.) Were Kollmyer to die during the defendant's life, the courts would not listen to a claim that she held the status of widowhood. (*Whitsell* v. *Mills*, 6 Ind. 229; *Claim of Burr*, 11 Opin. Att'y-Gen'l, 1; *William's Appeal*, 92 Penn. St. 69; *In re Ensign*, 32 Alb. L. J. 262; *Moore* v. *Hegeman*, 92 N. Y. 522; *Roth* v. *Roth*, 104 Ill. 48.) Upon the granting of the decree respondent had no former husband living, and at the time of her marriage in this State she was not a wife of her former husband, for dower or distribution, in his real or personal property. (2 Bish. on Mar. and Div. § 705; 2 id. [6th ed.], §§ 165, 166, 167: *People* v. *Baker*, 76 N. Y. 78.) Full jurisdiction in the Ohio court was conferred over both parties to that action. (*Hunt* v. *Hunt*, 72 N. Y. 242; *Kinnier* v. *Kinnier*, 45 id. 540; *Lange* v. *Benedict*, 73 id. 26; *Pennoyer* v. *Neff*, 95 U. S. 727; *Williams* v. *Armroyd*, 7 Cranch, 423; Whar. Confl. of Laws, §§ 236, 237.) Respondent had no election to treat " at her pleasure " the judicial decree, as legal or illegal, as her feelings or interests should dictate. Status of the parties was controlled by the law of the Nation or State in which the domicile had been gained. (*People* v. *N. Y. C. & H. R. R. R. Co.*, 74 N. Y. 304; *Thornton* v. *W. Ry. Co.*, 81 id. 467; *Powers* v. *Benedict*, 88 id. 609.) Full faith is to be given the decree and judicial proceedings of the State of Ohio in the action between the parties to such former marriage, wherein the defendant was respondent and upon which not only she but the plaintiff in that action and the appellant here have each and all relied, given full faith and credit and acted. (Swan & Critch. Stat. of Ohio, 1 R. S., chap. 37, 509, 510, 511, §§ 1, 3, 4, 5, 6, 8, 15; note 2, § 3, 511.) That State had supreme and unlimited control over the status of its citizen, and the marital relation, as it affects the citizen, forms part of his status. (*Strader* v.

*Graham,* 10 How. [U. S.] 82 ; *Pennoyer* v. *Neff,* 95 U. S. 714 ; *Cheever* v. *Wilson,* 9 Wall. 108.) To banish the idea of secrecy and fraud, notice of some character is required. (*People* v. *T. H. Car Co.,* 87 N. Y. 140.) Abstruse definition is not required as to what constitutes " actual notice," respondent's receipt of the process having been a fact, and actual notice given to and served upon her, she being the sole defendant and the only person to be affected by it. ( *Williamson* v. *Brown,* 15 N. Y. 354 ; *Parker Mills* v. *Jacot,* 8 Bosw. 175.) The respondent's status and matrimonial relation *pendente lite* and upon the entry of the decree dissolving her marriage was not that of a citizen of the State of New York, nor was it sought to affect the *rem* there. (*Ennis* v. *Smith,* 14 How. [U. S.] 400 ; *Roth* v. *Roth,* 104 Ill. 46 ; *Hunt* v. *Hunt,* 72 N. Y. 217 ; *Kinnier* v. *Kinnier,* 45 id. 535 ; *Williams* v. *Armroyd,* 7 Cranch, 423 ; *Roth* v. *Ehman,* 104 Ill. 35 ; Story's Confl. of Laws, §§ 223–4, 228, 230 ; Whar. Confl. of Laws, § 211 ; Bish. on Mar. & Div. [5th rev. ed.] 113, 113*a,* 162, 164.) All the matters involved in the Ohio action are *res adjudicata.* (*Kamp* v. *Kamp,* 59 N. Y. 215.) This marriage of respondent and appellant is neither *contra bonos mores,* nor in any manner void at law or upon application of equities or good conscience. (*Singer* v. *Singer,* 41 Barb. 139 ; *Nichols* v. *Nichols,* 25 N. J. Eq. 60.) By reason of his *laches* creating estoppel, the conclusive judgment dissolving the former marriage, unaffected by any act of either party to that action, plaintiff cannot recover. (*Kinnier* v. *Kinnier,* 45 N. Y. 535 ; *Simmons* v. *Simmons,* 37 Hun, 551 ; *Hynes* v. *McDermott,* 91 N. Y. 451 ; 20 Weekly Dig. 522.)

*Per Curiam.* We think the case of *People* v. *Baker* (76 N. Y. 78), is conclusive on the question brought up by this appeal, viz. : Whether the court in the State of Ohio had jurisdiction to try the issue raised by the petition of K., as between him and his wife, she then being a non-resident of Ohio, and never a resident of that State, nor at any time there served with process of the court. There are some differences in the detail of

the circumstances of the two cases, but we think not enough to lead to any change in the result, nor sufficient to require a reconsideration of the law affecting it. The *Baker Case* was of great importance, involving, as it did, the liberty of a citizen; it was most fully argued, and we do not perceive that the discussion in the case at bar has developed any new principle, or brought to light any authority which was not then weighed by us. We do not think the question can be more fully investigated. Concerning the result there was, it is true, a dissent by the late learned chief judge, and the opinion recognized the fact that in other States, judgments contrary to the authorities followed in this State had been rendered. This conflict of opinion, however much to be regretted, continues, and it yet remains for some ultimate authority to relieve the point from the difficulties now attending it, and determine the civil rights of parties whose relations, as legally defined by different State tribunals, are liable to be regarded on one side of the State line as matrimonial, and on the other side as meretricious. Adhering, however, to the rule established in this State, a majority of the court are of opinion that the order appealed from should be reversed and the judgment of the Special Term affirmed, but without costs.

Danforth, J. (dissenting). The jurisdiction of the Supreme Court to grant the relief sought for in this action is purely statutory (Code, § 1745), and depends upon the existence of two facts there stated, and in substance repeated in the complaint. *First.* That the former husband was living at the time of the marriage in question; and *second,* that the marriage between that former husband and the defendant was then in force. As to the first there is, upon the evidence, no dispute. The controversy is over the second, and is to be determined as effect is given or denied to the judgment rendered by the Ohio court. In *Kinnier* v. *Kinnier* (45 N. Y. 535), full effect was given to a judgment of divorce granted by a sister State, although for a cause not deemed sufficient in this State, while in *People* v. *Baker* (76 N. Y. 82), it did not avail the defend-

ant who set it up. In the *Kinnier Case* the plaintiff was the second husband and unsuccessfully invoked the judgment of the courts of this State to annul his marriage. There both parties to the divorce proceedings were in the State when they were had, and parties to the suit. In the *Baker Case* the defendant was served with process by publication only, and his second marriage was held to be bigamous. The present suit was commenced soon after the determination of the *Baker Case*, and as stated on the argument, was suggested by it. The learned counsel for the appellant now relies upon it as furnishing a decisive answer to the decision of the court below.

The judgment in *Baker's Case* (76 N. Y. 78) was in assumed compliance with the rule theretofore uniformly laid down by the courts of this State, and is to be followed as a precedent in similar cases, but it should be taken in connection with the facts which seemed to warrant it, and so taking it, I feel at liberty to dissent from the conclusion of the majority of the court in the one at bar, and more readily because a limitation to the doctrine appears to have been in the mind of the court in that instance.

· In the language of the learned judge, whose opinion declared the views of his brethren, " it presents this question : Can a court, in another State, adjudge to be dissolved and at an end, the matrimonial relation of a citizen of this State, domiciled and actually abiding here throughout the pendency of the judicial proceedings there, without a voluntary appearance by him therein, and with no actual notice to him thereof, and without personal service of process on him in his State.

" We assume, in putting this proposition," says the learned judge, " that the defendant in error was in the situation therein stated." " We think," he adds, " that it may properly be thus assumed ; " and that importance was attached to this assumed situation of Baker, is apparent, not only from the care taken in stating the proposition, but by the argument by which it is sustained in the face of some evidence to the contrary. It appears, then, in the *Baker Case, first*, that the person whose rights the court in Ohio sought to affect is not only character-

ized as being at the time a citizen of this State, but as one actually abiding here during the judicial proceedings which were aimed at him. In the case at bar, the defendant in the divorce suit was neither domiciled nor a resident in this State, nor was she within its borders during the pendency of the proceedings therein. She was either domiciled in Ohio, because her husband's domicile was there, or she was domiciled in Canada, to which place she went, and where she resided. The latter place, it is said, was her domicile of choice. Assuming that to be so, that her husband's domicile was in Ohio, and her own in Canada, the question is whether the proceedings instituted by him were valid by the laws of those two places. Valid by the laws of Ohio they are conceded to have been, and there is no finding or evidence that they were not valid, also, by the laws of Canada. *Second.* In the next place there was in the *Baker Case* no notice of the proceedings save by publication. It is clearly implied in the proposition I have quoted, that if, *first*, the defendant had voluntarily appeared in the divorce suit ; or, *second*, been personally served with process in the State where it was pending ; or, *third*, had actual notice of the suit, a different conclusion would have been warranted, and effect given to the judgment of the Ohio court.

The whole argument of the learned judge was to show that the admission of the judgment of a court of a sister State, to credit and effect in another, was subject to limitations, and that it could be received only when it did not violate those principles which morality, or its standard of public policy, or municipal regulations require to be specially observed in the State in which the party relying on the foreign judgment had chosen to introduce it. " There is no principle of comity," he says, " which demands more," and so the ultimate question is treated by him as one of expediency, but requiring nevertheless the rule of the foreign law to be adopted, " *Quatenus sine prejudicio indulgenter fieri potest.*" It was not intended to deny the well-settled rule that where judgment has gone against a party in the State of his residence, or where not being a resident he has voluntarily appeared in the action, or

where he has been served with process within the State where
the action is pending, and so has been brought under the au-
thority of its courts, then under the provisions of the Consti-
tution (Art. 4, § 1) and the act of Congress (U. S. R. S.,
§ 905), the judgment is of the same force and validity in other
States as in the one where it was rendered. But where the
jurisdiction of the court rests only on the fact that the moving
party had his domicile within such jurisdiction, its claim to
recognition in other States rests on the ground of comity, and
this cannot prevail where the judgment sought to be accredited
has been rendered without giving the party to be affected an
opportunity to be heard. But as I understand the *Baker Case*,
it concedes that this rule does not inexorably require either
service of process or voluntary appearance, but may be satis-
fied when the party has in any way been given an opportu-
nity of being heard before judgment, or in the language of the
third condition of the question stated (*supra*) in the *Baker
Case*, has had " actual notice " of the judicial proceedings.

In *Doughty* v. *Doughty* (N. J. Eq. Rep., 12 C. E. Gr. 315 ; 1
Stew. 581, 582), the court treat the question of jurisdiction in a
divorce suit, arising out of the status and domicile of one of the
parties, in the same spirit in which it is treated in *Baker's
Case* (*supra*), and cite the New York authorities, but the court
say : " A judgment of divorce, proceeding from a jurisdiction
founded on domicile, would not contravene essential rules of
natural justice if actual notice to appear had been served on
the defendant residing abroad. It is true that a notice so served
on a litigant, out of the jurisdiction in which a suit is pending,
may add nothing to the judicial right to take cognizance over
the cause, but, nevertheless, it may impart a quality to the re-
sulting judgment that will serve as a credential to it in a foreign
jurisdiction," and refuse to accept the one then in question for
reasons like those given in *Baker's Case*, saying : " the resi-
dence of the defendant to it was known ; she was not summoned ;
she did not appear, and she was not served with process, nor
was notice given to her." Indeed as the object of all service
is to give notice to the party on whom it is made, that he may be

aware of, and may resist the relief sought against him; when that is substantially done, so that the court may feel confident that service has reached him, it would seem that everything has been done that is required.

This is said in *Gibbs* v. *Ins. Co.* (63 N. Y. 114, 127), and is repeated in *Pope's Case* (87 N. Y. 137, 140) with the addition, that any service which reasonably accomplishes that end answers the requirements of natural justice and fundamental law. Indeed it is difficult to see how it could be otherwise. We hold it enough within the strictest rule to serve process upon a defendant, although he is in transit — passing through the State, neither abiding here, nor having any intention to remain. Of what less real and substantial efficacy for all beneficial purposes is the actual delivery of the paper outside the limits of the State? So, as against a domiciled citizen of a State, a judgment rendered upon such substituted service is by the law of the State permitted, although he is in fact absent. And it is valid and binding upon him, though he is actually abiding in another State, and has neither appeared in the suit, nor had actual notice of it. His absence, whether temporary or prolonged, makes no difference. (*Hunt* v. *Hunt*, 72 N. Y. 217.) The same principle of comity is applied in favor of one claiming title under a foreign law, as *In re Waite* (99 N. Y. 433), where after a most exhaustive and elaborate examination of authorities it was decided upon those and upon principle, that while the statutes of foreign States have no force or effect within this State, and hence the statutory title of foreign assignees in bankruptcy can have no recognition by virtue merely of its origin, yet, that the comity of nations permits a certain effect to be given to titles so derived, when it can be allowed without injustice to our own citizens. So in many other instances effect is given by way of comity to the laws of other States, as in recognizing an administrator or guardian appointed under another jurisdiction. He may not act *de jure*, but it does not follow that his claim to property or to the care of a minor is to be denied.

In the case at bar it was shown that the process from the

Ohio court was actually delivered to the defendant and received by her, and moreover that she was personally present at the taking of depositions in the case on the part of the plaintiff, going thither, the proof is, "because she had been notified." Now although it may be said that, within the strict rules of law, she was not made a party to the adjudication, it cannot be doubted that under the argument in the *Baker Case*, and the authorities to which I have referred, the defendant had all the notice which reason and natural justice requires should be given and that by it all danger of imposition upon the party or the court was excluded.

*Third.* In another respect, although of much less importance, there is another difference to be noted in the relation of the two cases to our law. At the time of the decision of the *Baker Case* (January 21, 1879), an order for service by publication, or without the State, in a divorce case, could only be had "where the defendant is a resident of the State" (Code of Civil Proc., § 438, subd. 4), and to that fact reference was made in the opinion; but those words were by a subsequent amendment (Laws of 1879, chap. 542) stricken out and the law restored to its original condition, so that now judgment in this State may be rendered against a non-resident defendant in a matrimonial action, either for a separation, a divorce absolute, or an annulment of a marriage, upon service of the process upon him or her outside of the State, or by publication.

It is apparent, therefore, that the subject was before the legislature for deliberate examination, and their conclusion will not permit us to say that public policy is opposed to such proceedings as those in Ohio, now under review, for it authorizes the doing in this State of the same thing, in the same manner and with the same object. Moreover, as if to remove any inequality in applying it, and relieve the married woman from the traction of that legal fiction by which she is supposed to follow and be with the husband, although, in fact, separated by intervening continents, it provides that if she dwells within the State when she commences an action for divorce or for separation, she is deemed a resident thereof, although her husband

resides elsewhere (§ 1768). It also directs judgment when default occurs in appearing or pleading, whether the summons and complaint has been personally served in the State, or whether service has been made by publication, and this is so whether the action is to annul the marriage, or for a divorce, or a separation. (§ 1774.)

The law of procedure under which the Ohio court acted was precisely like our own, and I can find no circumstances in the case which require us to depart from the rules of comity, which exact consideration for the laws and judicial proceedings of other States, and on which we depend for respect to our own. I have so far looked at the case from the appellant's stand-point, and treated the rights of the respondent as if she had made herself in Canada a domicile separate from that of her husband. Even in that view, the learned court below committed no error in holding that there was no substantial ground upon which the plaintiff could invoke its interference, and that the case was not one which required the marriage between these parties to be annulled. But another, and I think correct statement, of the respondent's position, permits us to say that her domicile was, at the time of the divorce proceedings, with her husband in the State of Ohio, and in that respect also the case differs from the *Baker Case*.

Except as altered by statute, the rule of the common law, which identifies the married woman with her husband, is adhered to by the courts of this State, and upon the question now before us, its decisions require us to hold that the domicile of the husband is *prima facie* that of the wife, not only because the home of one is the home of the other, but because it is her duty to go with him where he goes, and dwell with him where he dwells. Indeed under the maxim referred to it could not be otherwise. One in person, and that person the husband, the common law by no fiction could give her a separate domicile, nor even admit of its possibility. Therefore in *Baker's Case*, the wife, plaintiff in the divorce proceedings, in theory of law had her domicile with her husband, and thus both were residents and citizens of this State. In the case

before us, the husband was a legal citizen of Ohio, and the defendant's domicile, by virtue of the same theory, also in that State.

But in *Hunt* v. *Hunt (supra)* it is said that "from necessity, she may in certain cases have a domicile in another jurisdiction than that of her husband, as when they are living apart under a judicial decree of separation, or when the conduct of the husband has been such as to entitle the wife to an absolute or limited divorce," and so the reason of the rule weakens in power when in extreme cases the conduct of the husband has been such as to make it proper for the wife to seek relief from her obligation to have the same home and interest with him, and altogether ceases when a judicial decree has separated and adjudged them to live apart. These exceptions are justified, the first upon the ground that otherwise " the husband might constantly change his domicile, and drawing that of his wife after his, prevent her finding a court having that jurisdiction of person which would enable her to try her suit for redress and relief.

" It is evident," says the learned judge, " that this reason," by which I understand him to mean the *reason of the rule,* viz.: the theoretic identity of person and of interest between the husband and the wife in the eye of the law, " will also operate in favor of the husband, so that where he has ground for a suit by reason of the misconduct of the wife, she may not so often change her domicile as to baffle him in his pursuit of a remedy." Now in the case before us no ground can be found, upon which either exception can be placed. By deliberate stipulation in this case, it is conceded that defendant in the Ohio suit—that is the wife, left her husband, the plaintiff in that suit. No fault or error in behavior, or bad treatment on his part is suggested. On the contrary, the record shows that at the time of the commencement of the suit in December, 1864, she had been willfully absent from him for more than three years; that he had applied to her to live with him, and she had refused to do so; that always while they lived together, he had provided well for her and treated her properly.

The referee also finds that she left her husband. He did not go to Ohio to evade the law, nor to procure a divorce, nor to draw her from a friendly jurisdiction. She left him. He went to Ohio in good faith to reside and acquire a domicile, and he has since resided there, now nearly twenty years. So far as appears he was without fault, and the removal of his wife entirely without cause, and willful. Upon what ground then has she acquired a separate domicile?

The chief case cited by the appellant is *Borden* v. *Fitch* (15 Johns. 121), which is relied upon as "an express decision, to the effect that the acquisition of a new domicile by the husband does not draw the wife into the same jurisdiction." It furnishes no exception to the rule laid down in *Hunt* v. *Hunt* (*supra*). Fitch and his wife were inhabitants of, and domiciled in Connecticut; they lived together there until October, 1808, when upon her application and notice, and after appearance, and contest by him, the general assembly of that State, for abundant cause, decreed a separation at her pleasure, with, to her, " the privileges of a *feme sole*," and alimony to be paid by him annually. At all times after she continued to reside there, but in 1813, upon an allegation that she had willfully deserted him, he obtained, in Vermont, a decree of divorce. He afterward married in this State, and was shortly after sued by the second wife's mother for debauching her daughter. He relied upon the Vermont divorce, but without success, the court holding that the act of the legislature of Connecticut should be deemed a divorce *a mensa et thoro*, and involved a legal separation, and so the case was brought within the first exception I have referred to, viz. : a separation by judicial decree, or what is of equal or greater effect, a legislative enactment.

I do not think it necessary to inquire how the case would stand if the husband had deserted his wife ; such a case is not before us. Until we are prepared to give up the common-law rule as respects the relation and unity of man and wife, we cannot hold that the wife at her pleasure, and without cause, may establish a separate residence or a domicile beyond the

man's control.　It may be conceded that a judgment, obtained as was the one we have considered, would be of no effect as against the person, nor as one in *rem*, except as it was enforced or took effect within the State, but it cannot be doubted that the courts of Ohio had jurisdiction over the plaintiff K. and over the subject-matter of the suit there instituted by him. The judgment had force within that State, not only as to him, but the defendant should she go therein.　No marital right could be claimed by her.　Moreover by marriage a status is acquired which implies not only membership in a family, with certain rights, but a relationship in which the State is interested, and which therefore is subject to its control.　And however regarded it is apparent that a judgment in the rendering of which the court exercised such jurisdiction as it did in this case, must have a very different influence from one of any other character.　The distinction is conceded in the cases before referred to (*Hunt* v. *Hunt; People* v. *Baker, supra*), and distinctly declared in *Pennoyer* v. *Neff* (95 U. S. Rep. 714.), where the effect of judgments obtained without personal service of process, in actions against the person, or property, or to establish a status, is considered.　In the first, it is said to avail nothing ; in the second, to be good against property within the State whose courts render it, but not out of it; in the last, to determine the status or condition of the resident by dissolving the marriage tie, and therefore necessarily precludes the other party from asserting, or any court in any State from holding that the marriage so dissolved exists or is in force.

It follows, I think, that the true and safe rule is as stated by Cooley (Const. Lim. 400), that the actual *bona fide* residence of either husband or wife within a State will give to that State authority to determine the status of such party, and to pass upon any questions affecting his or her continuance in the marriage relation, and that the courts of that State, authorized by its legislature to take cognizance of the subject, may lawfully pass upon such questions and annul the marriage for any cause allowed by the local law, that jurisdiction over the opposite party may be acquired in such manner as the legislature

may direct, and whether by service in, or notice out of the State, or by publication, is sufficient to justify a decree changing the status of the complaining party, and thereby terminating the marriage. By holding otherwise we declare our own statutes (Code Civ. Proc., § 438, sub. 4; § 1774), upon the same subject unavailing, and compliance with them a useless and idle formality.

There is another proposition yet to be considered and answered in his favor before the plaintiff can succeed on this appeal. The *Baker Case* (*supra*), however much or little it may be regarded as differing in principle from the one before us, brought before the court a very different case, arising under a different statute. His conviction for bigamy was upheld because he contracted a marriage in this State in violation of the act concerning divorces, and for the purposes of that act, and proceedings for its violation, and the punishment of bigamy, it was evidently thought immaterial whether his first marriage was "in force" or not. Referring to the claim urged for the prisoner that our laws permitted such proceedings as were had against him in the Ohio court, the learned judge says: "This is but to say that on the principle of the comity of States, we should give effect to this judgment." "But," he continues, "this principle is not applied where the laws and judicial acts of another State are contrary to our own public policy, or to abstract justice, or pure morals. The policy of this State always has been that there may of right be but one sufficient cause for divorce *a vinculo*, and this policy has been upheld with strenuous efforts." The divorce then in question was not for that cause and it was not to be recognized. Under those laws a person whose guilty act has made divorce possible cannot marry a second time, if merely the former wife or husband is living. (2 R. S. 139, §§ 5, 6.)

Those are the words of prohibition, and to bring a party within them it is necessary only to show, first, a prior marriage, and second, that the parties thereto are living. "It does not import that the relation still continues, or, on the other hand, that it has ceased. Upon that point it is silent, but limits the

inquiry to the dry fact whether the person with whom the prior marriage was contracted still lives at the time of the subsequent marriage." (*Cropsey* v. *Ogden*, 11 N. Y. 233.) In that case in answer to the claim of counsel that the prohibition of the fifth section should be read as if it said "during the life-time of any *husband or wife* to whom the party was formerly married," the court declined to do so, saying "the meaning would be very much altered if we should yield to the request. So read, it would or might import that the relation of husband and wife must still continue between the former husband and wife, at the time of the subsequent marriage," adding "the word 'former' as used in the section in question" (§ 5), "imports that the relation of husband and wife once existed, but neither affirms its existence nor denies its termination. The prohibition then relates to the case of either party to a marriage, whenever and wherever contracted, both the parties to which are living, and prohibits either to contract a second or subsequent marriage during the life-time of the other, except in certain specified cases. This construction has recently been approved by us with great significance in overruling *Hovey's Case* (5 Barb. 117), where it was held by the Supreme Court that after the dissolution of a marriage for adultery, the marriage contract was at an end and the relation of husband and wife no longer existed between the parties, and if the guilty party marries again he is not within the penalty of the act against bigamy, but in *Faber's Case* (92 N. Y. 146) we held that for the purpose of enforcing the statutory prohibition, a person against whom a divorce had been obtained is regarded by the statute as having a husband or wife living so long as the party obtaining the divorce lives and that a conviction could be had, although the former marriage had been dissolved. Whether the former marriage was in force or not at the time of the offense was entirely immaterial. The statute (Code of Procedure, § 1742), brought before us by this appeal, permits no such construction. It adopts the language of the former statute, but adds a new term to it. "An action," it declares, "may be maintained to procure a judgment declaring a marriage contract void, and annulling the marriage,

if at the time of the marriage the former husband or wife of one of the parties was living, and the marriage with the former husband and wife was then in force." This last condition requires the interpretation which the court in *Cropsey v. Ogden* (*supra*) refused to give to the one first referred to.

One is satisfied with the fact of a former marriage and the present existence of the parties; the other requires as much, viz.: (1) A former marriage; (2) the present existence of the parties, and also (3) that the former marriage itself be then in force. Now in *Baker's Case* (*supra*) the court say (p. 84). "We must and do concede that a State may adjudge the status of its citizen toward a non-resident, and may authorize to that end such judicial proceeding as it sees fit, and that other States must acquiesce so long as the operation of the judgment is kept within its own borders." So is the whole argument of the learned judge. Hence he says: " If one party to a proceeding is domiciled in a State, the status of that party, as affected by the matrimonial relation, may be adjudged upon, and confirmed or changed in accordance with the laws of that State." The claim was indeed made that the State, where the other party was domiciled, might exercise over him or her the same jurisdiction and so apply the statute against bigamy. But that does not contain the governing words of the other. And even if within that opinion the courts of Ohio could not declare the status of the defendant in this State, it could and it did lift the marriage yoke from off the neck of its citizen, relieved him from the " *vinculum matrimonii*," and hence although the parties to the former marriage still lived, one of them was confessedly relieved from all his marital obligations and legally disabled from enforcing those of the other. She had no husband at least in the State where he lived. The contract was no longer binding on him. It follows that the former marriage cannot be said to have been in force at the time of the marriage which is the subject of this action.

When the statute speaks of a "marriage then" (at the time of the second marriage) "in force," it must mean a marriage by which both parties are bound and as to which the relation

of neither party has been changed. What is the allegation of the plaintiff here? That K., living in Ohio, is the husband of the defendant, and the marriage "in full force." Neither assertion is true. As to K., it must be conceded, under any aspect of the case, the marriage is dissolved, and under any view of the law, that he is discharged from the marriage bond. The judgment operates upon him in Ohio, attaches to, and determines his relation and character. In *Moore* v. *Hegeman* (92 N. Y. 521), commenting upon a similar statute of New Jersey, it was said to be very clear " that it had in contemplation a wife or husband who had not been divorced and who was invested with all the marital rights conferred by a lawful marriage." If I am wrong in supposing that the facts of this case are not enough to bring it within the proposition, on which the opinion in *Baker's Case* (*supra*) stands, then the defendant here might be found guilty of bigamy, because the policy of our law recognizes no divorce save for one cause, and that not the one alleged against her. But there is nothing in that decision which requires us to hold that the former marriage was in force when the second was solemnized. On the contrary, the necessary result of the opinion is that the Ohio decree was good as changing the status of the wife, but not effective in this State to protect her from the imputation of bigamy. If the status of the wife was changed, the marriage was not in force. And in view of these conflicting conditions, the learned judge recognizes the hardship of being " a husband in name, and under disabilities, or ties, in one jurisdiction, and single and marriageable in another." If the law is to be so rendered, and this defendant put in that position, it will still remain, that the plaintiff's case was not brought within the plain language of the statute. It certainly cannot be said that the former husband, as to whom, even under the doctrine of the *Baker Case*, the dissolution of marriage is absolute, can, in any degree, be held united to the defendant, by the tie which such a relation implies. I think the decree put an end to the contract. But if it had only a partial operation, the marriage cannot be said

to be in force; and that the statute requires as a condition of jurisdiction.

One other question remains: Was the evidence on which the referee put his decision competent? Public policy forbids that a marriage should be dissolved either by the mere consent of the parties thereto, or by a judicial proceeding which has no other foundation than their admissions. Were it otherwise, the morals of the community would be easily corrupted and the forms of law made effectual in the profanation of marriage. Therefore the Code, which has changed the common-law rule as to the competency of witnesses in civil actions, forbids husband or wife testifying, in an action for divorce on the ground of adultery, to any matter save their marriage. What cannot be done by their testimony should not be done indirectly by any act of theirs, neither by admission in pleading nor by stipulation of counsel. Here we find no evidence of the fact of the former marriage. The pleadings indeed concede it, and counsel have stipulated that it took place. Neither of these things can have any efficacy, except as they were authorized by the parties, and their admission or statement, however formally expressed, should ·have no effect when their testimony as witnesses is excluded. Neither will the law permit such a judgment by default, although in other actions the silence of the defendant is effectual as an admission in favor of the plaintiff. The fact pleaded and the fact stipulated is the vital one in the case, and to permit a divorce under such circumstances is practically to concede that a relation in the continuance of which the State has an interest, may be dissolved, as it was formed, by the simple agreement of the parties.

I have examined the cases, which, as cited by the appellant, seemed to bear upon this question, but find none which requires a different conclusion from the one expressed. In my opinion, therefore, the learned court below did.not err under the circumstances of this case, in whatever aspect they may be viewed, in refusing to annul the marriage between the plaintiff and the defendant. They might ·well hold that the plaintiff's case was not proven, or if there was irregularity in

the proceedings in the court of Ohio, waive it in a spirit of comity and accredit the judgment, rather than pronounce a relation which for nearly twenty years the parties treated as lawful, to have been adulterous. They might also hold that the judicial proceedings in Ohio were effective, and that the interest of society and justice to the parties required that respect should be given to them.

I think the order appealed from should be affirmed and the defendant have judgment absolute, dismissing the complaint.

RUGER, Ch. J., RAPALLO, ANDREWS and EARL, JJ., concur, for reversal; MILLER and FINCH, JJ., concur with DANFORTH, J., and dissent.

Order of General Term reversed and judgment of Special Term affirmed.