## In re FEYH'S ESTATE.

*(Supreme Court, General Term, First Department.    March 29, 1889.)*

1. DIVORCE—JURISDICTION—DOMICILE.

    A husband and wife, who had lived in Ohio ever since their marriage, went to New York, where they remained about six years, but the former always claimed residence in Ohio, and kept up his membership in a society there. He then left her for her adultery, and never lived with her afterwards. Though temporarily in other places, he still claimed residence in Ohio, and as such resident sued for a divorce on the ground of her adultery, committed, as he alleged, both in Ohio and New York. All the proceedings were regular, by publication of summons, and a divorce was granted *a vinculo matrimonii*, for adultery, which would have been sufficient ground for such a divorce in New York. There was nothing to show that the suit was brought in Ohio to evade any law of New York, or that any fact on which the judgment was rendered did not exist. *Held*, that the action for divorce was brought in the court of the husband's residence, and the judgment was valid.[1]

2. JUDGMENT—VALIDITY.

    The judgment having been rendered at the husband's instance, his administrators cannot be heard to allege its nullity for want of jurisdiction over the wife's person.

Appeal from surrogate's court, New York county.

The accounts of Richard J. Morrison, public administrator, and administrator, etc., of Mary E. Feyh, deceased, being before the surrogate for settlement, Katharine Koffloo, administratrix, and Allison Butts, administrator, of the estate of Henry Feyh, deceased, claimed to be entitled to the fund in the right of their intestate, who, as they alleged, was the husband and sole distributee of her estate. From a decree awarding it to said claimants, Charles Chorpenning and others, also claiming to be distributees, appeal.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Alexis C. Smith*, for Chorpenning and others, appellants. *Bristow, Peet & Opdyke*, (*David Willcox*, of counsel,) for William Peet, special guardian

---

[1] See note at end of case.

for certain infant appellants.  *Frank W. Arnold*, for Morrison, administrator, etc.  *Eugene K. Sackett, (James L. Williams*, of counsel,) for Henry Feyh's administrators, respondents.

VAN BRUNT, P. J.  In December, 1861, the decedent, Mary E. Chorpenning, married Henry Feyh at Montgomery, Franklin county, Ohio.  They resided in Columbus, Ohio, until the year 1869, when they came to the city of New York, and resided here until April, 1875.  During this time, in 1873 or 1874, it is in evidence that Henry Feyh stated that he did not claim this as a residence; that his father and mother lived in Columbus, and that he always claimed that as his home.  In April, 1875, Henry Feyh left his wife because of her infidelity, and they never again cohabited with each other as man and wife; Mary Ellen continuing to reside in New York until her death, which happened on the 31st of March, 1885.  She died intestate, and left no issue or lineal descendants.  From 1875 to the time of his death, which took place in May, 1885, Henry Feyh resided in various places, namely, Philadelphia, New York, Russia, Jersey City, Ohio, Hartford, Norristown, and Boston, where he died.  In October, 1875, he married in New York a woman named Adelaide Nelson, and from that time they lived together as husband and wife.  During all this time he was a member of a lodge of Odd-Fellows at Columbus, Ohio, and kept up his standing therein.  On the 10th of March, 1881, Henry Feyh began an action in the court of common pleas in the county of Franklin, Ohio, for a divorce from Mary Ellen Feyh, on account of her adultery committed both in Ohio and in New York.  In the petition by which the action was begun he alleged that he had been a resident of Ohio for a year last past and more; that he was a *bona fide* resident of the county aforesaid; and that Mary Ellen had been guilty of adultery at divers times and places, some of said adulterous acts being alleged to have been committed in Ohio, and some in New York.  Notice of the pendency of this petition was given, in accordance with the laws of Ohio, by publication in a newspaper printed in Franklin county.  No notice or summons in the action was served upon her, and she did not appear therein, and had no notice of the action or proceedings therein otherwise than by the publication aforesaid.  On the 12th of September, 1881, judgment was rendered in said action in favor of Henry Feyh, upon the petition of the plaintiff, the exhibits, and the testimony of witnesses sworn and examined in open court, that the said defendant was duly notified of the pendency of the suit, and whereby it was adjudged and decreed that the plaintiff and defendant were married as set out in the petition, and that the plaintiff had discharged all and singular his marital duties towards the defendant, and that the said defendant had been guilty of the crime of adultery, as alleged in the petition; and it was further adjudged that the marital relations theretofore existing between the plaintiff and the defendant should be set aside, annulled, and stand for naught, and the plaintiff released from the obligations of said marriage.  The requirements of the laws of Ohio were in all respects complied with, and the judgment remains in full force, and there is no allegation, proof, or finding that the judgment was fraudulent and collusive, or that any fact necessary to sustain the judgment was not true, and not proven upon the trial.  After the entry of the judgment of divorce, and upon the 15th day of August, 1882, Henry Feyh was again married to the aforesaid Adelaide Nelson by a magistrate in Philadelphia, Pa., and they continued to cohabit as husband and wife until the death of Henry, leaving three children.  Mary Ellen having died intestate and childless in New York on the 31st of March, 1885, and having left personal estate, all of which she accumulated after the divorce, letters of administration upon her estate were granted to the public administrator.  Henry Feyh never applied for letters of administration, and died intestate at Boston, May 10, 1885, and letters of administration upon his estate were duly granted.  It is now claimed in this

proceeding that the divorce proceedings in Ohio were absolutely void, and that at the time of his death Henry Feyh was the husband of Mary Ellen, and therefore entitled to the possession of her personal estate.

In the disposition of this question we do not think it necessary to discuss in detail the number of cases which have been cited as authorities, both by the respondents and the appellants. It will be found upon an examination of these cases that they are all distinguishable in very important particulars from the case at bar. It has not as yet been decided in this state that where a person is domiciled in another state, has married in that other state, his wife has committed adultery there, and an action for divorce has been begun and a decree rendered in that other state because of this adultery, annulling the marriage, that such decree is void in this state because, after the separation, the wife has made her domicile within this state, and has been served by publication. It is true that there have been decisions holding decrees of divorce in foreign states to be null and void where the jurisdiction of the state has been evidently sought for the purpose of evading the laws of this state, unless both parties have submitted to the jurisdiction of the court, or where a divorce has been granted upon grounds not recognized by the law of this state, and jurisdiction within that state has not been obtained of the defendant. The case which goes the furthest in this direction is that of *People* v. *Baker*, 76 N. Y. 78. In that case it was held that where an action for divorce was commenced in the state of Ohio to dissolve a marriage upon the ground of gross neglect of duty, and the proof showed service of process upon the defendant by publication, the defendant residing within this state, a decree rendered in such action was null and void. The court, in its opinion, stated: "It is urged upon us that our state cannot with good grace hold invalid this judgment of a court of Ohio, when our own court provided at the time of the rendition of it for the giving of judgment of divorce against a non-resident by like substituted service. It is true that until the new Code of Procedure such had been the case. * * * This is but to say that on the principle of the comity of states we should give effect to this judgment. But this principle is not applied when the laws and judicial acts of another state are contrary to our own public policy, or to abstract justice or pure morals. The policy of this state always has been that there may of right be but one sufficient cause for a divorce *a vinculo;* and that policy has been upheld with strenuous effort against persistent struggles of individuals to vitiate and change it." And it was because this principle had been violated,—that there was an attempt to change the *status* of a citizen of the state of New York, for a cause not recognized as sufficient by the laws of this state,—that the decree in the case of Baker was pronounced null and void. To the same effect was the case of *O'Dea* v. *O'Dea*, 101 N. Y. 23, 4 N. E. Rep. 110, and *Cross* v. *Cross*, 108 N. Y. 628, 15 N. E. Rep. 333. But it has not yet been decided, as already stated, that where, under precisely the same circumstances, and under the same proof which we must assume was given in Ohio, a decree of divorce *a vinculo* would be granted by the courts of this state, we will not recognize such decree when granted by the laws of a sister state. By our own laws a husband or wife may maintain an action against the other party to a marriage to procure a judgment of divorce by reason of the defendant's adultery, where both the parties were residents of the state when the offense was committed, or where the offense was committed within the state, and the injured party, when the action was commenced, was a resident of this state.

By the allegations in the decree—which are found to be true by the court of Ohio, which court had the right to adjudicate upon this question, having jurisdiction of the subject-matter—it was adjudged that while the plaintiff and defendant were residents of the state of Ohio the defendant had committed adultery. Under our own laws this would have been sufficient to procure a decree of divorce, and in recognition of the Ohio decree we do not run

counter to our own public policy or abstract justice or pure morals, but simply recognize the principle of the comity of states, and give due effect to the judgment of a sister state. By the proof in the case at bar every objection raised in the cases cited to the recognition of the decree of the foreign state has been obviated. There is not the slightest ground to suppose that recourse was had to the jurisdiction of Ohio for the purpose of escaping the laws of this or any other state; but, upon the contrary, it appears upon the whole evidence that the plaintiff simply resorted to the state of his domicile for the purpose of enforcing rights which the infidelity of his wife had given him. And it is no answer to this proposition to say that because of his adulteries committed after the separation from his wife in consequence of her infidelity she had a right to obstruct him in the procurement of such divorce. She knew that he was living with the woman that he subsequently made his wife. She made no objection thereto, and took no action because thereof. She evidently did not consider herself injured by reason of that relationship, but recognized the right of her husband to leave her because of her infidelity to him. Under the evidence in this case, in the consideration of this question it must necessarily be conceded that Mary Ellen had acquired a domicile in the state of New York. She had separated from her husband. She resided in this state, bought real estate here, lived in it, and died in it, and it seems to us, under these circumstances, we must hold that she had acquired a domicile separate from her husband. It seems also equally apparent that Henry Feyh never lost his domicile in Ohio, though he lived wherever his work required him to be. The evidence shows that he had stated that Ohio was his home. He went there occasionally, and kept up his connection at home, remaining a member of the lodge of Odd-Fellows there, and undoubtedly regarding the state of Ohio as his domicile. And this is accentuated by the fact that he went to the state of Ohio for the purpose of initiating these proceedings, alleging himself to be domiciled there, when, if he had been domiciled elsewhere, for precisely the same reason, and by going through the same proceeding, he might have obtained the same relief. There is no claim whatever but that the statements made by him in his affidavit to procure the publication of the summons were correct, or that anything was done by him for the purpose of avoiding giving notice to the defendant of the proceeding which he proposed to institute. It appears, therefore, to us that if ever a judgment is to be recognized and given effect to it must be under circumstances such as have been developed in the case at bar.

There is another suggestion, and that is that Henry Feyh, having invoked the jurisdiction of the court of Ohio, and submitted himself thereto, cannot now be heard to question such jurisdiction. And the claimants here occupy precisely the same position that Feyh would have occupied had he been living. This position does not rest upon the doctrine of estoppel, as such term is ordinarily used, but upon a principle which has been repeatedly recognized by the courts, that where a party has gone into a court, and invoked its jurisdiction, he cannot subsequently attack the decree of the court obtained at his instance because of the want of jurisdiction of somebody else. In the case of *Hewitt* v. *Northrup*, 75 N. Y. 510, this principle is clearly recognized. In the case at bar, therefore, Henry Feyh cannot be heard to claim the nullity of this decree, he having invoked the jurisdiction of the court, and asked its rendition. It seems to us, therefore, that so much of the decree as is appealed from should be reversed, with costs, and the matter sent back to the surrogate for further action. All concur.

### NOTE.

DIVORCE—JURISDICTION—CONFLICT OF LAWS. To give jurisdiction of an action for divorce at least one of the parties must be an actual, *bona fide* resident of the state where the action is brought. Smith v. Smith, (Neb.) 28 N. W. Rep. 296. And under the *Massachusetts* statute the parties must have lived together as husband and wife in

the commonwealth before a bill for divorce can be·maintained. Weston v. Weston, 9 N. E. Rep. 557. Under the *Kansas* Code, requiring plaintiff in an action for divorce to be an actual resident, a temporary residence as a federal office-holder is not sufficient. Carpenter v. Carpenter, 2 Pac. Rep. 122. Nor in *Kentucky* is a mere legal residence, with an actual residence out of the state, sufficient to give jurisdiction. Tipton v. Tipton, 8 S. W. Rep. 440. In Colburn v. Colburn, (Mich.) 38 N. W. Rep. 607, it was held· that where a man went from one state to another with the intention of residing therein, leaving no property in the former state, and having in his new home only what he had earned since coming there, a *bona fide* residence, sufficient to maintain an action for divorce, was shown, though he testified that his main purpose in coming to the state was to procure a divorce. In *Pennsylvania* the action must be brought in the county of plaintiff's residence. Sherwood's Appeal, 4 Atl. Rep. 455. The decree of divorce of the court of another state may be collaterally attacked. Neff v. Beauchamp, (Iowa,) 36 N. W. Rep. 905. A wife may leave her husband for sufficient cause, and acquire a separate domicile in another state, the courts of which will have jurisdiction of her suit for divorce. Arrington v. Arrington, (N. C.) 9 S. E. Rep. 200. On return of the wife to what was her domicile before marriage, the courts of the state of the husband's domicile have jurisdiction of his suit for divorce. Larquie v. Larquie, (La.) 4 South. Rep. 335.

*New Hampshire* courts will not decree a divorce for a cause which arose out of the state, at a time when neither of the parties had a domicile in the state. Norris v. Norris, 15 Atl. Rep. 19. Though a decree of divorce is valid where obtained, it may be held a nullity in another state, where defendant resides. Flower v. Flower, (N. J.) 7 Atl. Rep. 669.

See, also, on the general subject of jurisdiction in divorce proceedings, note to O'Dea v. O'Dea, (N. Y.) 4 N. E. Rep. 110, cited in opinion; Van Orsdal v. Van Orsdal, (Iowa,) 24 N. W. Rep. 579, and note.