Martin B. Campbell, Respondent, v. Alice Campbell, Appellant.

*Husband and wife — action to annul a marriage upon the ground of a prior marriage — foreign divorce — jurisdiction — domicile.*

In order to constitute a place the domicile of an individual he must have his residence there, with an intention to remain at that place permanently. The intent as well as the act must appear.

Upon the trial of an action, brought to annul a marriage upon the ground that the defendant had a husband living at the time of her marriage to the plaintiff, it appeared that the defendant was married in the State of New York in January, 1880, to one Loren Whitney; that subsequently they lived in Pennsylvania until about April, 1883, at which time he left that State and returned to the State of New York; that thereafter the defendant obtained a divorce from Whitney in an action instituted in a court of Pennsylvania having jurisdiction, service being made upon Whitney by publication; that subsequently the plaintiff and defendant were married in the State of New York, and cohabited for four years. There was no evidence tending to show that when Whitney left Pennsylvania he intended to make the State of New York his domicile, but it appeared that he knew of the divorce proceeding while it was in progress, and that after the decree was granted he married again.

*Held,* that the burden was upon the plaintiff to prove that Whitney had ceased to have his domicile in Pennsylvania at the time when the action for a divorce was begun in the courts of that State;

That as it did not appear from the evidence that such was the fact, both the parties must be deemed to have had a domicile in the State of Pennsylvania at the time when the divorce was granted there, and that, the proceedings having been taken in the manner provided for by the statutes of that State, the judgment of divorce was valid and effectual.

Appeal by the defendant, Alice Campbell, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 20th day of September, 1893, upon the report of a referee, and also from an order made at the Steuben Special Term and entered in the office of the clerk of the county of Steuben on the 20th day of September, 1893, confirming the report of a referee and directing the entry of judgment thereon.

*A. M. Burrell,* for the appellant.

*E. T. Hollis* and *A. J. Robertson,* for the respondent.

BRADLEY, J.:

The plaintiff and defendant were married in March, 1885, at Jasper, in the county of Steuben, N. Y., and cohabited as husband and wife until in April, 1889, and not thereafter. In 1892 the plaintiff brought this action to annul the marriage on the alleged ground that the defendant had a husband still living in the person of Loren Whitney, to whom she was married prior to her marriage with the plaintiff. She was married to Whitney in January, 1880, at Jasper, N. Y. Afterwards, for about two years preceding April, 1883, their place of residence was in the county of Tioga in the State of Pennsylvania. Whitney in that month left that State and went to the State of New York. And thereafter, in July of that year, the defendant commenced an action in the manner provided by the statutes of that State in the Court of Common Pleas of Tioga county, Pennsylvania, on the alleged ground that he had deserted her and on the further charge of adultery alleged to have been committed by him. No personal service of process was made, but notice was served upon him by publication, and it is assumed that all the proceedings in that suit were had and taken in the manner provided by the statutes of Pennsylvania for the prosecution of an action against a person absent from the State. The alleged cause was sufficient in that State for the relief sought by the action, and in January, 1884, a decree was therein perfected in terms and apparent effect dissolving the marriage contract between the defendant and Whitney. If the domicile of Whitney was in the State of Pennsylvania at the time the action was instituted and the notice published there, jurisdiction was acquired of his person although he may have been residing elsewhere. (*Huntley* v. *Baker*, 33 Hun, 578; *de Meli* v. *de Meli*, 120 N. Y. 485.) And in that event the decree in the Pennsylvania action would be effectual to dissolve their marriage relation of husband and wife. (*Hunt* v. *Hunt*, 72 N. Y. 217.) This is presumptively the effect without further proof on the subject, as since Whitney's domicile had been in that State it would be deemed to remain there until it was made to appear that he had acquired a domicile elsewhere. (*Crawford* v. *Wilson*, 4 Barb. 505.) And the fact and intent must concur to that effect to produce a change of domicile. (*Lyman* v. *Fiske*, 17 Pick. 231 ; 28 Am. Dec. 293.)

The plaintiff had the burden of proving that the domicile of Whitney in Pennsylvania had ceased by his acquiring one elsewhere. The facts bearing upon the subject are furnished by the evidence of Whitney, who testified that he left Pennsylvania and went to Sandusky, Cattaraugus county, N. Y.; lived there a year; "lived in Farmersville; worked there two months of 1884; then in March, 1884," went to Sandusky. At the time of the trial, March, 1893, he resided at Hinsdale in Cattaraugus county. He says that his uncle residing in Tioga county, Penn., wrote him frequently about what was taking place there; that when the witness was living in Machias, Cattaraugus county, he was informed by letter that the defendant "had just got a divorce from me." He says this was in 1885; that he afterwards, in that year, married another woman by whom he has four children. He further testified: "When I went away from Pennsylvania in 1883 I took part of the goods. None of my goods were left behind in Pennsylvania that I know of." He added that he has not since voted in that State, but has voted repeatedly in the State of New York. He does not state when he first voted after he came to New York. His evidence shows that he has acquired a domicile in the State of New York, but the question is, does it appear by the evidence that he had done so when the action in Pennsylvania was instituted and the notice was published there?

The evidence is not very satisfactory in that direction. When a person has no family elsewhere the place where he resides is presumptively his domicile unless it appears that he is residing there for some specific purpose which does not characterize it as such, but it is otherwise when he is the head of a family residing at some other place. (*Huntley* v. *Baker*, 33 Hun, 578.) His residence may be in one place and his domicile in another. The question is one of intent as well as act. In *Matter of Thompson* (1 Wend. 45) Mr. Chief Justice SAVAGE quoted from Vattel with approval the remark that "The domicil is the habitation fixed in any place with an intention of always staying there." And in *Matter of Roberts' Will* (8 Paige, 524) the chancellor said: "I think it cannot be doubted that the actual residence of an individual at a particular place with the *animus manendi*, or a fixed and settled determination to make that his permanent residence for the remainder of his

life, constitutes that place his domicile, at least until there is some evidence that his intention to remain there has been abandoned." It may, however, be deemed sufficient to constitute the domicile of a person in a place that his residence is there with the intention to remain at that place permanently. (*Gilman* v. *Gilman*, 52 Maine, 165 ; 83 Am. Dec. 502.) The intent as well as the act must be made to appear. (*Dupuy* v. *Wurtz*, 53 N. Y. 556.) As of the time the action was commenced in Pennsylvania it simply appeared that Whitney had left there and gone to Sandusky in the county of Cattaraugus about three months before. No circumstances as of that time were proved to show his intent to make his residence there permanent. What, if anything, he had done there to characterize his purpose in that respect does not appear. And although Whitney was called as a witness to support this action he does not give evidence of his intent then to make it permanently his place of residence. His intention, if such was the fact, to abandon his domicile in Pennsylvania did not have the effect to create another where he happened to stop unless he also intended to make his residence at such other place permanent. He did not lose sight of the fact that his wife remained in Pennsylvania. He had his correspondent to inform him what was going on there, and when advised that his wife had obtained the divorce he treated it as effectual and proceeded to obtain another wife. If Whitney had acquired another domicile at the time the Pennsylvania court sought to obtain and take jurisdiction of him as a party the fact should be made to appear quite satisfactorily before annulling the marriage in question. The cases to which our attention has been called where the divorce decrees have been adjudged void for want of jurisdiction, are cases where the parties seeking them have left the State of the domicile of the husband and wife and gone elsewhere to seek the forum. (*Kerr* v. *Kerr*, 41 N. Y. 272 ; *Hoffman* v. *Hoffman*, 46 id. 30 ; *Williams* v. *Williams*, 130 id. 193 ; *Vischer* v. *Vischer*, 12 Barb. 640.) The same may be said of the *Baker Case* (76 N. Y. 78) and *O'Dea* v. *O'Dea* (101 id. 23).

In the case at bar the wife remained in the State which had for some time been the domicile of herself and husband, and there instituted her suit, in which the decree of divorce was granted. The distinction between her case and those cited was observed by

the court in *Matter of Morrisson* (52 Hun, 102). The affirmance on review by the Court of Appeals was without opinion (117 N. Y. 638). Whether the latter court adopted both or only one, and which of the propositions announced at the General Term, does not appear. The remark in the opinion of the court in *Rigney* v. *Rigney* (127 N. Y. 412, 413), in support of the remedy of divorce by a resident of the State against the husband or wife who is a resident of another State, may be deemed to relate to the effect of the judgment within the State where it is recovered. This is in accordance with the views of the court in *Williams* v. *Williams* (*supra*). (See, also, *Scragg* v. *Scragg*, 44 N. Y. St. Repr. 845.)

It may be assumed upon the facts found by the referee that the judgment of divorce obtained by the defendant in Pennsylvania was valid and effectual in that State. Her action was in the nature of a proceeding *in rem* to annul the marriage contract and relation for adequate cause. When one of the parties to such relation deserts the other, and seeks and acquires a domicile elsewhere, and the latter remaining in the State which, up to the time of such desertion, was their common domicile, recovers a judgment of divorce without personal service of process or appearance of the defendant in the action, whether or not the judgment is effectual in behalf of the party obtaining it beyond the boundaries of the State in which it is recovered, has not necessarily been presented for determination by the courts of the State in any case to which our attention has been called. In such case the status of each of the parties may be determined by the State which is his or her domicile. The *res* on which the judgment in such case is operative is that within the State where recovery is had, and there is no jurisdiction over the *res* in the State of the domicile of the other party. The latter, therefore, it would seem, could not make the judgment available beyond the State where it was rendered.

It is not deemed necessary, for the purposes of this review, to proceed to the consideration of the question whether in the supposed case a judgment could operate to have any and what effect upon the status of the party obtaining it beyond the State where a decree is had.

The judgment should be reversed and a new trial granted, costs of this appeal to abide the final award of costs.

DAVY and LEWIS, JJ., concurred.