MARY WILLIAMS, Respondent, *v.* CORNELIUS WILLIAMS, Appellant.

*Supreme Court, First Department, General Term July 9, 1889.*

1. *Divorce. Abandonment.*—Where the defendant refused to take back his wife without cause, left the state and proceeded to obtain a divorce *a vinculo*, it settled the status of the parties, and a cause of action for separation, on the ground of abandonment, at once accrued to plaintiff.
2. *Same.*—The defendant has no cause of action against the plaintiff on the ground of abandonment, where he would not permit her to live with him, unless on the condition that she would never see her mother again.
3. *Same. Foreign judgment.*—In such actions, proof of a judgment rendered in another state awarding defendant a divorce *a vinculo* was properly excluded.
4. *Same. Alimony.*—Where defendant earns from $3,000 to $3,500 per annum, and the plaintiff's income is about $1,000 per annum, a provision of $500, by way of alimony, for the support of plaintiff, and $500, for the support of the child was held to be proper.
5. *Same. Counsel fee.*—The allowance of counsel fees in the final judgment, is unauthorized.

Appeal from a judgment of separation, and awarding alimony, costs and counsel fees.

*F. H. Platt,* for appellant.

*Austen G. Fox* and *S. Sidney Smith,* for respondents.

BARRETT, J.—The findings of fact of the learned judge at special term, amply support the conclusions of law, and these findings of fact are in turn supported by the evidence. The testimony shows a plain case of abandonment at or about the time charged in the complaint. Up to that time

25

the parties had been living apart for upwards of two years. The defendant claims that during this period, the plaintiff was in the wrong, and liable at any moment to be justly proceeded against for abandonment. This claim is without foundation. The plaintiff was always willing to live with the defendant if he would permit her to do so. He would not however, permit her to live with him, except upon a most unreasonable and tyranical condition, namely, that she should never see her mother again. It was not that her mother should live elsewhere, nor that the intercourse should be restricted, but that the door between mother and child should be shut, absolutely and forever. The plaintiff offered to go with the defendant, if he would only let her see her mother. But the refusal was firm and peremptory. "When you leave this house, you are not to see your mother; * * * you shall not go where she is; you will have no communication with her; you shall not write to her—have no communication with her whatever; * * * if you want to see your mother, you cannot go with me." A few days later this was repeated.

The plaintiff's testimony is clear upon this point. "He came to me and said: what is your answer? I said: It is just the same as I gave you Sunday night; if you will only let me see my mother, I will go with you. Then he said: you know what I told you Sunday night. If you want to see your mother you can't go with me." The defendant denies the imposition of this condition, as thus testified to; but the court, at special term, credited the plaintiff, and upon good grounds. The defendant admits that the mother question was a subject of debate between them, but seeks to give a somewhat different color to the conversation. This is his version: "Then I got up and said: you must understand *that you have got to give up your mother and you will have to choose between your mother and me.* She said you are asking too much when you ask me to give up my mother, I never can give up my mother. I said: I don't ask you to

give up your mother wholly and entirely, but I simply require that your mother shall not come back to our house and you shall not go away with your mother and remain with her."

Here there was no condition; and although the language italicized was harsh and pretty close in meaning to the plaintiff's version, yet what follows would not have been unreasonable. But the contemporaneous letters tend to corroborate the plaintiff with regard to this disputed condition. The defendant demanded her return and she answered: "If it is to be under the same conditions as you offered me before, you know my answer." In his reply, he reiterates his command to return, but observes: "I am the more averse to your mother than ever, since I have learned of some of the things which she has said about me, and I cannot stoop to make conditions as to her." He does not here deny that he had made such conditions before—as intimated in his wife's letter. All that she desired was, that he should withdraw them. She did not wish to impose her mother upon him. She told him that all she asked was to see her mother occasionally, that she would never mention her mother's name, and that her mother should never cross his path. But he was obdurate and this obduracy pervaded the entire period of separation.

It is clear that upon these facts, the defendant had no cause of action against the plaintiff for abandonment and that he could not successfully interpose her refusal to live with him, because of this unreasonable and inhuman condition as an answer to her subsequent entreaty to be permitted to return to him. Whether it would be different if such a cause of action for abandonment had actually accrued, it is not, therefore, necessary to consider.

The plaintiff, at the time she begged the defendant to take her back, had done nothing which justified the defendant's refusal, and his abandonment then commenced. That the facts at this point established a complete abandonment

cannot be doubted. It was deliberate and definite. He not only refused to take the plaintiff back, or to listen to her pathetic appeals, but he left New York, took up his residence in another state, and there proceeded to obtain a divorce *a vinculo*. That settled the status of the parties, and the present cause of action at once accrued.

The other questions require but little consideration. The appellant concedes that the court is bound by the principle of the O'Dea Case (101 N. Y. 23); and consequently the judgment of the Minnesota court, awarding the defendant a divorce *a vinculo*, was properly excluded.

The alimony was somewhat larger than the circumstances warranted. The defendant earns from $3,000 to $3,500 per annum, and the plaintiff's income is about $1000 per annum. The court, at special term, allowed her $1,500, namely, $500 for the child and $1,000 for herself. That gives her a total income of $2500 and leaves the defendant from $1500 to $2000. To earn this professional income the defendant must have an office and certain professional equipments. All this should be considered, for upon the defendants professional success the plaintiff is wholly dependent for security in obtaining punctual and steady compliance with the decree. He should certainly not be crippled in his efforts to provide the necessary means. Upon the whole we think the provision for the child should stand, but the sum awarded to the plaintiff should be reduced to $500 per annum.

The counsel fee was unauthorized. The statute (Code Civ. Pro., § 1769) only makes provision for costs. That is, in the final judgment. All sums necessary to enable the wife to carry on the suit must be awarded on special motion. Beadleston v. Beadleston, 103 N. Y. 402; 3 N. Y. State Rep. 634; Percival v. Percival, 14 N. Y. State Rep. 255.

The judgment appealed from should be modified in the particulars specified in this opinion, and as thus modified, affirmed, without costs of this appeal.

DANIELS, J., concurs in the result.

VAN BRUNT, P. J.—While concurring with Mr. Justice BARRETT in the conclusion at which he has arrived in this case, I do not concur in the assumption that the decree of divorce obtained by the defendant in Minnesota could not, under any circumstances, be admitted in evidence as a bar to this action. The defendant was a *bonâ fide* resident of Minnesota, and as such, he filed his bill for a divorce. It is true that the plaintiff was not served with process within the state of Minnesota, but was served outside of the state, and upon such service a decree was rendered. It is also true that under the cases of The People *v.* Baker (76 N. Y. 78, O'Dea *v.* O'Dea (101 N. Y. 23) and Cross *v.* Cross (108 Id. 628 ; such a decree was inoperative and void, it having been granted for a cause not recognized by the laws of this state, the defendant in such action being a resident of the state. But this rule, I think has been entirely overthrown by the decision of the supreme court of the United States in the case of Maynard *v.* Hill (125 U. S. 190). In that case it appeared that in 1828 David S. Maynard and Lydia A. Maynard intermarried in the state of Vermont and lived there together as husband and wife until 1850, when they removed to Ohio.

In 1850 the husband left his family in Ohio and started overland for California under a promise to his wife that he would either return or send for her within two years, and that in the meantime he would send her the means of support. He left her without such means, and never afterwards contributed to her support or that of her children. On the 16th of September, 1851, he took up his residence in the territory of Oregon, and continued ever afterwards to reside there, and on the 22d of December, 1852, there was passed by the legislative assembly of Oregon the following act: " An act to provide for the dissolution of the bonds of matrimony heretofore existing between D. S. Maynard and Lydia A. Maynard, his wife. Section 1. Be it enacted by the legislative asembly of the territory of Oregon that the

bonds of matrimony heretofore existing between David S. Maynard and Lydia A. Maynard be and the same hereby are dissolved." And the question presented to the court was whether that act dissolving the marriage between David S. Maynard and Lydia A. Maynard, the latter not having been a resident of Oregon at the time of the passage of the act, was valid in Ohio, where her husband had left her. The court, after discussing the question and answering it in the affirmative and holding that the power over divorces remains in the legislature in the absence of constitutional prohibition say, "we are justified in holding, more, we are compelled to hold that the granting of divorces was a rightful subject of legislation according to the prevailing judicial opinion of the country and the understanding of the profession at the time the organic act of Oregon was passed by congress when either of the parties divorced was at the time a resident within the territorial jurisdiction of the legislature. If within the competency of the legislative assembly of the territory, we cannot inquire into its motives in passing the act granting the divorce; its will was a sufficient reason for its action. One of the parties, the husband, was a resident within the territory, and as he acted soon afterwards upon the dissolution and married again, we may conclude that the act was passed upon his petition. If the assembly possessed the power to grant a divorce in any case, its jurisdiction to legislate upon his status, he being a resident of the territory, is undoubted, unless the marriage contract was a contract within the prohibition of the federal constitution against its impairment by legislation or within the ordinance of 1787, the privileges of which were secured to the inhabitants of Oregon by their organic act." Both of these questions the court answered in the negative, and held that this legislative divorce obtained in Oregon without assigning any cause, one of the parties being a resident, dissolved the marriage in question.

This case establishing the proposition, therefore, that if, in the case at bar it had been established that by an act of the legislature of Minnesota the marriage between the plaintiff and the defendant had been dissolved, the defendant being a resident of that state such action upon the part of the legislature would have been a bar to the present action unless it was shown that there was some prohibition restraining the act of the legislature.

Now if the legislature can itself dissolve a marriage without assigning any cause where either of the parties are resident within its limits, is it not equally true, that they may establish a system by which these contracts are to be dissolved for certain causes and determine how and to whose satisfaction the existence of the causes are to be established ? And this is all they do in forming a system by which judicial divorces are to be granted. The legislature clothes the judiciary with power, which it has the right to do, designates certain circumstances under which that power shall be exercised, and has thrown upon the judiciary the duty of entertaining such application under the restrictions which the legislature has imposed. It is a delegation of authority from the legislature to the judiciary authorizing the judiciary to perform an act which in the absence of constitutional prohibition the legislature itself would have the right to do.

The constitution of the United States (sec. 1, art. 4), provides that full faith shall be given in each state to the publics acts, records and judicial proceedings of every other state. The interpretation of the United States supreme court as to the powers of the legislature under such circumstances is necessarily authoritative.

It may be stated as a necessary result of the foregoing reasoning that it was error to exclude the decree in the case at bar. But the difficulty with the defendant's case in that respect is that he has not proved the law of Minnesota. He seems to have offered the decree in a perfunctory

manner, knowing that the decision of the court of last resort in this state had held such decree to be void, and, therefore, he thought it was not of much use and does not seem to have taken any pains to make it relevant. But if he had proven the laws of Minnesota and shown that this decree was entered in accordance with those laws I cannot see how under the decision which has been quoted, it could have been excluded and why it would not have been a bar to the present action. But there being no evidence of the laws of Minnesota, the court cannot take judicial cognizance of those laws. Whether this decree was entered in pursuance of any such law we know not, and we cannot assume anything upon that point.

I, therefore, concur in the result arrived at by Mr. Justice BARRETT.