REBECCA G. MUNSON, RESPONDENT, v. GEORGE H. MUNSON, APPELLANT.

*Divorce — decree fraudulently obtained in another State — not conclusive as to jurisdiction — a divorce valid in another State, but shown, in an action between residents of the State of New York, to be invalid in New York, is not a bar in the latter State.*

A husband and wife were married in New Jersey, and thereafter became domiciled in the State of New York. The husband left his wife, went to California solely for the purpose of taking advantage of its divorce laws, and procured a divorce, valid there, upon evidence known to him to be false. Service was made on the wife in the divorce proceedings by publication and by mail, directed to her in New Jersey, where the husband had sworn that her residence was. After obtaining the divorce he returned at once to the State of New York, and subsequently married there one Flint.

In an action brought by the first wife for a divorce *a vinculo* on the ground of the husband's adultery with Flint:

*Held*, that as both parties to the California decree were, in contemplation of the law, residents of this State, the service upon the wife did not confer jurisdiction and said decree was invalid in the State of New York.

That the record in the California action was not conclusive as to jurisdiction, and our courts would inquire whether the husband's residence and domicile in that State was real or only colorable.

That, although the California divorce was valid in that State, it had been shown to be fraudulent and invalid upon a trial had in this action for divorce by the wife, and hence was not a bar thereto.

APPEAL by the defendant George H. Munson from a judgment, entered in the clerk's office of the county of Montgomery on the 5th day of August, 1890, granting to the plaintiff an absolute divorce from the defendant upon the ground of adultery, permanent alimony and the custody of her son.

*M. L. Stover* and *Matthew Hale*, for the appellant.

*Edward J. Maxwell*, for the respondent.

LEARNED, P. J.:

This is an appeal from a judgment upon a decision by the court. The action was brought for divorce, and judgment was rendered in favor of plaintiff. The defendant appeals.

The parties were married December 10, 1873, in New Jersey. The defendant is now living and cohabiting in this State with another woman to whom he claims to have been lawfully married in the State of California on the 22d of September, 1888, after a divorce claimed to have been obtained by him against the present plaintiff in the said State of California, August 28, 1886. Soon after the marriage of plaintiff and defendant, and prior to January 1, 1880, they became residents of the State of New York, and they continued to be such residents until the present time, unless the departure of the defendant in July, 1885, from the State, changed his residence. Up to that time they had treated each other as man and wife. The learned justice who tried the case found as a fact that about September 1, 1885, defendant left the State of New York and went to California; that he did not go there for the purpose of establishing a residence, and had no intention of establishing a residence there; that he went solely to effect an ostensible change of resi-

dence so as to avail himself of the laws of that State in order to procure a divorce, intending to return to this State when he should have procured such divorce. That finding is sustained by defendant's own testimony. He says he went in July to the State of Washington, thence to California; that he told his wife he would go into the cattle business at Custer, on the Northern Pacific Railroad; that he had $200 capital; that this was insufficient; that when he reached California he applied for employment but did not get it; that he invested his $200 in railroad fares; that he went to Honolulu to see the country; went to Oregon; went to Alaska to see mines, and engaged· in no permanent business in California. He says he did not transfer his church connection.

On the 22d of April, 1886, this defendant commenced an action against the plaintiff in the Superior Court of San Francisco, California, for divorce, on the ground of her desertion since February, 1882, and her extreme cruelty. He made an affidavit that she was not a resident of California, but, at that time, of New Jersey. On that an order for publication and for service on her by mail was made in that court, and on the 9th day of August, 1886, her default was entered in that court. The complaint in that action averred that he had been for six months a resident of California; that in February, 1882, his wife willfully deserted and had since lived apart from him without any cause; that she had been guilty of extreme cruelty towards him by her extravagance, bad temper and her charging him with infidelity, which acts had seriously injured his health.

After the default, the testimony of Munson was taken, and testimony by commission was also taken at Amsterdam, N. Y. And on the 28th day of August, 1886, a decree of divorce was granted in that Superior Court, dissolving the bonds of matrimony by reason of the desertion and extreme cruelty of the defendant therein, the present plaintiff.

Within a few weeks after obtaining the divorce the defendant returned from California to Amsterdam. He went back to the same business in which he had been engaged, as employee of Birch, his former partner, taking forty-five per cent of the net profit; the business having been during the interval, and being still, conducted under the same firm name of Munson & Birch.

He became acquainted with Miss Susan Flint at Amsterdam, in 1887, and married her in California, September 22, 1888. He has continued to live in Amsterdam since his return in September, 1886, and cohabited with her as his wife.

The parties entered into a stipulation in regard to the California judgment, in which, among other things, it is admitted that the judgment was duly given and was regular and valid under the laws of California. The defendant claims that, under that stipulation, it was incompetent for the plaintiff to give evidence tending to show the intent with which the defendant went to California, and the reason why plaintiff did not accompany him. The defendant urges that all evidence on those points was excluded by the stipulation.

To understand the meaning of the stipulation we must notice that the pleadings show that the contest in the case was to be on the effect of the California decree as to the plaintiff. And the stipulation was intended to avoid unnecessary trouble. Thus the jurisdiction of the court over such actions was admitted, the commencement of the action and the judgment therein. The record was to be produced by defendant. It was also stipulated that the matters alleged in the action were sufficient, if true, to authorize that court to grant the decree under the laws of that State. Here the expression "if true" shows that the parties did not agree to admit the truth of the allegations of that complaint. Those allegations include the residence of Munson for six months in California, the desertion by the wife, the present plaintiff, and her extreme cruelty. Evidently those were not admitted to be true. Then comes the clause that the judgment was duly given, etc. Now, the fair construction of this clause, in view of the issue between the parties, and considering the whole stipulation, is, that the proper legal course was taken, and that the judgment was regular according to California laws. It did not waive the question whether jurisdiction of the parties had been in fact acquired, or whether the judgment was fraudulently obtained.

In *People* v. *Baker* (76 N. Y., 78) it is stated that it appeared by the statute offered in evidence that the proceedings in the Ohio action were regular and sufficient, and the judgment valid and binding under the laws of that State. But although that fact appeared, the court held the judgment incompetent, except to show intent. The stipulation in the present case showed nothing more than the

statute did in the *Baker Case.* The jurisdiction of the court over the parties remained assailable.

The learned justice who tried the case found, as a fact, that the defendant was not, when he commenced his action, or at any other time, a resident of California. The defendant's own testimony establishes this unquestionably. It is hardly possible to read his own testimony, and the letters which he wrote to his wife just before he went away, and have any doubt on this point. Nothing which he did showed any intention of becoming a resident of that State. He says that he did not transfer his church membership, and, judging from the testimony given by him in California, we should think that he had not carried his church membership into that State.

The learned justice also finds that the charges of desertion and of cruel treatment made in defendant's complaint in the California action were wholly untrue and without foundation. This finding is fully sustained by defendant's own testimony and by his own letters. He charged her with desertion since February, 1882. His letter to her in August, 1882, directs her to go to Ogdensburgh, N. J., and stay with her parents. In October, 1882, he urges her to go to a physician in New York. She was suffering from some nervous trouble, and his letters in January and in February, 1883, direct her to go to Brandon, Vt., and tell her he will get her a boarding-house and hopes she will soon be well. In April, 1884, he suggests again that she go to Ogdensburgh to live. In August, 1884, he writes that she cannot come where he is with his consent, nor have any support from him if she does, and hopes her father will keep her. He testifies that he visited her oftener than every month when she was away from home ill; he did not object to her going away, and that he furnished her money to go. This is in direct contradiction to the testimony which this defendant gave in the California action, where he testified that his wife did not go away with his consent.

It is evident that his wife was for some time in a nervous condition; that her absence from his house was with his approval and for the apparent purpose of benefiting her health. And while it is apparent that there was a lack of harmony between them, for which

she may very possibly have been to blame in whole or in part, still the pretense of desertion is utterly false, if the defendant's testimony and letters are to be believed.

The argument of the defendant in this case is that, even if he were, in fact, a resident of New York, and not of California, and even if he went to California with intent of fraudulently procuring a divorce, and even if, by his own false testimony, he induced the court of California to hold him to be a resident of that State, and to hold that this plaintiff deserted him, and although this plaintiff never appeared in that action and never was served with process in California, and although she has always been a resident of New York, yet that the judgment in California is binding on her. We do not think such is the law of this State.

In *Ruger* v. *Heckel* (85 N. Y., 483) the defendant and her former husband had been residents of this State. She had brought an action against her former husband, and after personal service on him she had obtained a divorce. She then married Ruger, who knew these facts. He afterwards brought this action to have the former decree of divorce annulled. The court held that the action would not lie. The plaintiff was a stranger to the former action ; and the parties to that former action were bound by it. Both had appeared therein.

So in *Kinnier* v. *Kinnier* (45 N. Y., 535), where the question arose as to the validity of a divorce in Illinois ; both of the parties to that divorce were in Illinois when the action was commenced and the defendant appeared therein. And though it is stated that there was collusion, yet both parties were actually in Illinois and both appeared in the action. These are cases where there had been an appearance by the defendant in the divorce action.

The case of *Hunt* v. *Hunt* (72 N. Y., 230) was one very carefully considered ; and at page 241 the court say that a valid judgment in divorce may be rendered against a defendant not within the territorial jurisdiction during the progress of the suit, if that be *the place of his citizenship and domicile*, though he is not served personally and has not appeared. But the court say that there are numerous authorities to the effect that a judgment of another State against a resident of this State who has never been a citizen of that other State, without personal service of process or voluntary appear-

-ance, is not a valid judgment and may be inquired into by our courts; and on such facts appearing may be disregarded as without jurisdiction. That was the case of a service out of the State upon a defendant who was held to be domiciled within the State at the time of the service, and, therefore, amenable to the laws and process of the State where the action was commenced.

There is nothing in the case of *Cheever* v. *Wilson* (76 U. S. [9 Wallace], 108) contrary to this view. Because there was an answer put in by the defendant in the action for divorce and a cross petition. So that jurisdiction of the parties was had.

Further, in *Hoffman* v. *Hoffman* (46 N. Y., 30), it was held that the record of the divorce action in another State was not conclusive as to jurisdiction. To the same effect is *Kerr* v. *Kerr* (41 N. Y., 272. And in *Hoffman* v. *Hoffman* the court of this State did decide that the plaintiff in the Indiana divorce action was not a resident of that State and that the judgment was a fraud, although that judgment purported to show that such plaintiff was such resident.

The early case of *Borden* v. *Fitch* (15 Johns., 121) laid down the same doctrine. And it bears a noticeable resemblance to this present case, because there, also, the plaintiff in the Vermont divorce action charged his wife with willful desertion, which charge the court says was false and known to be so by that plaintiff.

In the view of these decisions we think that the learned justice who tried the case had a right to consider whether the defendant was really a resident of California when he commenced the action or whether such pretended residence was only colorable; and we think his decision on that matter was correct. (Cooley on Const. Law, m. p. 401.)

Here the present case stands in marked contrast to that of *Maynard* v. *Hill* (125 U. S., 190), strongly urged by the defendant. In that case Maynard and his wife were domiciled in Ohio. He went away and took up his residence in Oregon and continued to reside there till his death. While residing there the legislature of the territory passed an act annulling his marriage. The question which arose was respecting the right of his divorced wife to certain land. The court held that a legislature, not prohibited, might pass an act granting a divorce; that the husband was a resident of Oregon

and that the act was valid.  The court do not hold that such an act would be valid if neither party had been a resident.

It seems to us hardly necessary to quote at any length from the decisions in *People* v. *Baker* (76 N. Y., 78); *O'Dea* v. *O'Dea* (101 N. Y., 23); *Cross* v. *Cross* (108 N. Y., 628; *S. C.*, 13 N. Y. St. Rep., 470).  They seem to be conclusive to sustain the judgment below, and in the last case it may be noticed that it is again asserted that it was competent in that case to disprove the recital in the Illinois decree that the defendant was resident there when he obtained it.  Even the elaborate dissenting opinion in the *O'Dea Case* claims that the decree of divorce in another State, obtained without personal service, is binding only when the plaintiff is a *bona fide* resident of the State.

The doctrine of these cases is again affirmed in *Jones* v. *Jones* (108 N. Y., 415; *S. C.*, 13 N. Y., St. Rep., 840), although in that case the appearance and answer of the defendant in the Texas suit was held to make the same binding on him.  In fact, the defendant practically admits that the decisions of the Court of Appeals above cited are fatal to his case unless they are overruled by the case of *Maynard* v. *Hill* or made ineffectual by the stipulation.

We have considered the question on the fact, as found by the trial court, that defendant never actually changed his residence. In *Williams* v. *Williams* (25 N. Y. St. Rep., 183), the husband and wife had been living apart for some two years owing to the husband's unreasonable requirements.  Then the husband left New York State, took up his residence in Minnesota, and there procured a judgment of divorce *a vinculo*.  The wife brought this action for separation on the ground of abandonment.  On the authority of the *O'Dea Case* the Minnesota judgment was excluded and plaintiff's action sustained.  So that it was held that the wife could maintain this action although the husband had taken up his residence in another State and had there procured a judgment of divorce *a vinculo*. The view probably was that the departure of the husband was an abandonment and gave a right of action which the wife might prosecute in this State notwithstanding his change of residence. (Jacobs on Domicile, § 224.)  It is not necessary for us to apply that doctrine here.  We need not consider what would be the rights of the wife if the husband should *bona fide* change his residence, and

she should refuse to go with him, and if he should thereafter obtain a divorce in the State of his new residence by publication against her.

There remains another point to consider. Under the decisions in *Van Voorhis* v. *Brintnall* (86 N. Y., 18), and *Thorp* v. *Thorp* (90 id., 602), the marriage in California between defendant and Susan Flint being valid, is valid here. Therefore, the defendant says that he is not guilty of adultery in this State. The first case, however, was a question as to inheritance of property. In the second, the defendant being sued for divorce on the ground of adultery, set up the alleged invalidity of his marriage with the plaintiff on the ground that by a previous decree of divorce he was forbidden to marry, and that he married in Pennsylvania to avoid the prohibition.

Thus in neither of these cases were the rights of the wife involved, in respect to whom an invalid decree of divorce had been fraudulently obtained. It is plain that those cases are not considered by the Court of Appeals to disturb the doctrine we have laid down, since the *O'Dea Case* and the *Cross Case* are subsequent to those just cited.

We are of the opinion that the judgment should be affirmed, with costs.

MAYHAM, J. :

I concur in the result reached in the opinion of my Brother LEARNED in this case. The jurisdiction of the court of the sister State of California may be properly inquired into in this action.

If that court, by the fraud of this defendant, assumed jurisdiction of his person when he was not a resident of that State, but was in fact a resident of New York, its proceedings were *coram non judice* and void. And that fact may properly be proved in this action.

But if that court had jurisdiction, its determination would, as to the courts of this State, be final, and it would be in that case error for the courts of this State to inquire whether this plaintiff (the defendant in that action), had, in fact, deserted her husband, or done any other act charged in that action and constituting a ground for a divorce in that State.

But the evidence in this case establishes that this defendant at the time of obtaining his order of publication in California and of prosecuting his action and obtaining his decree in that State, was

not a resident of that State, and that, therefore, the courts of that State had no jurisdiction to grant the order or entertain the action, and it acquired no jurisdiction of this plaintiff as defendant in that action, and that the judgment in this action should, therefore, be affirmed.

LANDON, J., concurred.

Judgment affirmed, with costs.