In the Matter of the Application for Letters of Administration of the Goods, Chattels and Credits which were of EDWARD C. KIMBALL, Deceased.

MAUDE E. KIMBALL, Appellant; HARRIET A. KIMBALL et al., Respondents.

1. JUDGMENT OF ANOTHER STATE. The judgment of a court of a sister state has no binding effect in this state, unless the court had jurisdiction of the subject-matter and of the person of the parties; and want of jurisdiction may always be interposed against a judgment when it is sought to be enforced, or when any benefit is claimed for or under it.

2. WANT OF JURISDICTION. A personal judgment of a court of a sister state, entered against a resident of this state, when there has been no personal service of process upon him in the jurisdiction of that state or appearance by him in the action by which jurisdiction of his person could be acquired, is void and of no force or effect in this state.

3. DECREE OF DIVORCE. Service of summons within this state, upon a resident thereof, does not give the court of a sister state jurisdiction of the person of the defendant in a divorce suit, when he does not answer, demur, or in any manner appear in the action; and a decree rendered against the defendant under such circumstances will not uphold, in the courts of this state, a marriage subsequently contracted here between the plaintiff in the divorce suit and a third party in the lifetime of the defendant.

4. DECREE OF DIVORCE OF ANOTHER STATE VOID FOR WANT OF JURIS-
DICTION — NON-APPEARANCE OF DEFENDANT — QUESTION OF FACT. A
resident of this state, who had been served here with summons in a
divorce suit instituted in North Dakota, wrote a verified letter to the
plaintiff's attorney on the subject. A decree by default was there-
after rendered against the defendant. The plaintiff in the divorce suit
then married, in this state, a third party, who died here. Thereafter the
defendant in the divorce suit was permitted, without objection, to file the
letter as an answer therein, as of the time of its receipt by the plaintiff's
attorney, and the decree was amended *nunc pro tunc*, by inserting the
words, "the defendant having appeared herein and answered and sub-
mitted himself to the jurisdiction of the court." The plaintiff then applied
here to be appointed administratrix of the deceased third party, as his
widow. The surrogate found as a fact that the defendant did not appear
in the divorce suit — the letter not constituting an answer or appearance
therein — and this finding was affirmed by the Appellate Division by a
unanimous decision. *Held*, that the question whether the defendant
appeared and submitted to the jurisdiction of the court of North Dakota
was, under the evidence, a question of fact; that the finding thereon, hav-
ing been unanimously affirmed by the Appellate Division, could not be
reviewed by the Court of Appeals, under the Constitution (Art. 6, § 9);
that it followed that the decree of the court of North Dakota was without
effect in this state, and that the marriage of the plaintiff with the third
party was invalid and did not entitle the plaintiff to be appointed his
administratrix.

*Matter of Kimball*, 18 App. Div. 320, affirmed.

(Argued January 24, 1898; decided February 4, 1898.)

APPEAL by Maude E. Kimball from an order of the Appel-
late Division of the Supreme Court in the second judicial
department, entered June 22, 1897, affirming a decree of the
Surrogate's Court of Kings county denying her petition for
the removal of Harriet A. Kimball and John S. James, as
administratrix and administrator, and for the appointment of
herself as administratrix in their place and stead, of the goods,
chattels and credits which were of Edward C. Kimball,
deceased.

The facts, so far as material, are stated in the opinions.

*Thomas Allison* and *W. Harlock* for appellant. This
court has jurisdiction to hear this appeal. (*Proestler* v. *Kuhn*,
49 N. Y. 654; *E. R. N. Bank* v. *Gove*, 57 N. Y. 597; *Kin-*

*nier* v. *Kinnier*, 45 N. Y. 535 ; *Matter of Clark*, 119 N. Y. 427 ; *Sherman* v. *H. R. R. R. Co.*, 64 N. Y. 254 ; *Wahl* v. *Barnum*, 116 N. Y. 87 ; *Matter of Green*, 153 N. Y. 223.) The District Court of Dakota had general jurisdiction of the subject-matter of the action for divorce. (*Gridley* v. *College S. F. X.*, 137 N. Y. 327 ; Laws of Dakota, § 4825 ; *Leach* v. *Linde*, 70 Hun, 145.) The Dakota court had jurisdiction of the plaintiff in the divorce action, who is the appellant herein. As to her or any party standing upon, urging or relying upon her status, the decree of divorce is valid. The respondents cannot effectually insist that they have any rights which depend for their existence upon her right to object to the validity of that decree. (*Rigney* v. *Rigney*, 127 N. Y. 408 ; *Kinnier* v. *Kinnier*, 45 N. Y. 535 ; *Matter of Stilwell*, 139 N. Y. 337 ; *Brown* v. *Nichols*, 42 N. Y. 26 ; *Denton* v. *Noyes*, 6 Johns. 296 ; *Gridley* v. *College S. F. X.*, 137 N. Y. 327 ; Laws of Dakota, § 4825 ; *Leach* v. *Linde*, 70 Hun, 145 ; *Pringle* v. *Woolworth*, 90 N. Y. 502.) The Dakota court had jurisdiction of James L. Semon, the defendant in said divorce action. (*Audubon* v. *E. Ins. Co.*, 27 N. Y. 216 ; *Johnson* v. *Johnson*, 67 How. Pr. 144 ; *Matter of Stilwell*, 139 N. Y. 337 ; *Simmons* v. *Craig*, 137 N. Y. 550 ; *Morris* v. *Sickly*, 137 N. Y. 604 ; *Dyckman* v. *Mayor*, 5 N. Y. 434 ; *Stannard* v. *Hubbell*, 123 N. Y. 520 ; *Dwight* v. *St. John*, 25 N. Y. 203 ; *C. C. Bank* v. *Judson*, 8 N. Y. 254 ; *Pringle* v. *Woolworth*, 90 N. Y. 502.) The courts below committed an error of law when they held that the amendment was without jurisdiction and void, and that the decree did not dissolve the marriage between the parties in that action, and that the appellant herein, when she married the intestate, was the wife of James L. Semon, and did not become thereby the wife and is not now the widow of the intestate, nor entitled to letters of administration on his estate. (*Audubon* v. *E. Ins. Co.*, 27 N. Y. 216 ; *Stannard* v. *Hubbell*, 123 N. Y. 520 ; *Kinnier* v. *Kinnier*, 45 N. Y. 535 ; *Rigney* v. *Rigney*, 127 N. Y. 414 ; *Dunstan* v. *Higgins*, 138 N. Y. 70 ; *Lazier* v. *Westcott*, 26 N. Y. 146 ; *Brown* v. *Nichols*, 42 N. Y. 26 ; *Denton* v. *Noyes*, 6 Johns.

296; *Johnson* v. *Johnson*, 67 How. Pr. 144; *Harrison* v. *U. T. Co.*, 80 Hun, 463.) The contention that the decree of divorce having been amended after intestate's death, the amendment could not affect respondents' rights, which vested at the time of such death, is not well founded. (*Audubon* v. *E. Ins. Co.*, 27 N. Y. 216; *Maples* v. *Mackey*, 89 N. Y. 146; *Produce Bank* v. *Morton*, 67 N. Y. 199; *Sears* v. *Burnham*, 17 N. Y. 445.) There is no question of fraud in the case. (*Kinnier* v. *Kinnier*, 45 N. Y. 535; *White* v. *Merritt*, 7 N. Y. 352; *Ross* v. *Wood*, 70 N. Y. 8.)

*L. H. Arnold* for respondents. If James L. Semon did not appear in the divorce suit in North Dakota, the judgment in that suit is of no validity in this state; the appellant, at the time of her alleged marriage to Kimball and at the time of his death, was still the wife of Semon, and the marriage ceremony with Kimball was of no effect. (*People* v. *Baker*, 76 N. Y. 78; *O'Dea* v. *O'Dea*, 101 N. Y. 23; *Jones* v. *Jones*, 108 N. Y. 415; *Cross* v. *Cross*, 108 N. Y. 628; *Rigney* v. *Rigney*, 127 N. Y. 408; 160 U. S. 531; *Williams* v. *Williams*, 130 N. Y. 193; *De Meli* v. *De Meli*, 120 N. Y. 485; *Bell* v. *Bell*, 4 App. Div. 527; *Kamp* v. *Kamp*, 59 N. Y. 212; *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219.) The conclusions of the surrogate that "the court of North Dakota did not have jurisdiction to make said order of December 16, 1896, amending the said decree of divorce *nunc pro tunc* and said order was and is a nullity," and "that the said order of the court of North Dakota, dated December 16, 1896, amending the decree of divorce *nunc pro tunc* was not and is not binding upon the respondents herein, and did not in any wise affect or impair their rights or interests, as heirs at law and next of kin of said Edward C. Kimball, deceased, in the real and personal property left by him," are correct (*Bank of Rochester* v. *Emerson*, 10 Paige, 359; *Stuart* v. *Palmer*, 74 N. Y. 183; *Butler* v. *Lewis*, 10 Wend. 541; *Davis* v. *Morris*, 21 Barb. 152; *Boyden* v. *Johnson*, 11 How. Pr. 503; *Johnston* v. *Fellerman*, 13 How. Pr. 21; *Van Beck* v. *Shu-*

*man,* 13 How. Pr. 472; *Allen* v. *Smillie,* 12 How. Pr. 156; *Buchan* v. *Sumner,* 2 Barb. Ch. 165; *McKee* v. *Tyson,* 10 Abb. Pr. 392; *Lawless* v. *Hackett,* 16 Johns. 149.) The contention of the appellant's counsel in the court below that the original judgment of the North Dakota court was good as to the appellant, even if void as to Semon, and that it could not be questioned collaterally, is not entitled to serious consideration. It is well settled that a judgment rendered by a court which has not acquired jurisdiction of the defendant is a nullity, and may be attacked collaterally in any action or proceeding in which it comes up. (*Jones* v. *Jones,* 108 N. Y. 415; *Kamp* v. *Kamp,* 59 N. Y. 212; *Keith* v. *Keith,* N. Y. L. J., March 16, 1897.)

HAIGHT, J. Edward C. Kimball died in the city of Brooklyn on the 9th day of November, 1896, intestate, leaving him surviving Harriet A. Kimball, his mother, and Harriet I. Kimball, his sister, as his only next of kin and heirs at law. On the 10th day of November letters of administration were issued upon his estate by the surrogate of Kings county to Harriet A. Kimball and John S. James. On the 17th day of December thereafter, one Maude E. Kimball, claiming to be the widow of the deceased, filed a petition with the surrogate praying for the revocation of the letters of administration issued to Harriet A. Kimball and John S. James and for the appointment of herself in their place and stead. It appears that she was married on the 12th day of May, 1885, to one James L. Semon, in the city of New York, and that they resided together as husband and wife for a number of years, during which time two children were born to them; that in the month of June, 1890, she left her husband in the city of New York and removed to the state of North Dakota where she took up her residence, and after remaining in that state for a period of ninety days, instituted an action in the District Court of the fifth judicial district of that state for a divorce. She procured the summons to be served upon Semon in the city of New York where he still continued and ever since has resided.

The summons required him to appear and answer the complaint within thirty days after the service, and in default of so doing, the plaintiff would apply to the court for the relief demanded in the complaint. On the 31st day of December thereafter, the plaintiff's attorney made an affidavit to the effect that more than thirty days had elapsed since the service of the summons was made upon the defendant, and that no answer or demurrer to the complaint in the action had been received by him, and that the said defendant had not made, served or filed any appearance in any manner in the action. Upon this affidavit an application was made to the court for the appointment of a referee to take proof as to the facts alleged in the complaint, and upon the report subsequently made by the referee, judgment was entered annulling the marriage and granting her a divorce. About the 5th day of February, 1891, she returned to the city of New York, and on the 29th day of June, 1895, was married to Edward C. Kimball in the city of Brooklyn. They thereafter lived together until about the 3d day of January, 1896, when Kimball left her and went to Easton, Pa., to engage in business. He died, as we have seen, the following November. Kimball knew at the time of his marriage that the petitioner was a divorced woman, but he had no knowledge of the means by which such divorce had been obtained and did not know that it was invalid. After his death and in December, 1896, Semon, the former husband of the petitioner, applied to the Dakota court which granted the decree of divorce to have a letter which he sent to the plaintiff's attorney, filed in the court as his answer in the divorce suit *nunc pro tunc* as of the date of its receipt by the plaintiff's attorney, and to have the decree of divorce, made on the 26th day of January, 1891, amended *nunc pro tunc* as of that date, by striking out the recital to the effect that the " defendant had failed to answer, demur or make appearance in the action," and by inserting in place thereof the words, " The defendant having appeared herein and answered and submitted himself to the jurisdiction of the court." Notice of this application was given to the plain-

tiff's attorney who appeared in the divorce suit, but no notice was given to the personal representatives of the deceased. No one appearing to oppose, the motion was granted by the court and the judgment was amended *nunc pro tunc* as prayed for.

It is now contended that the judgment of the Dakota court, awarding to the petitioner a divorce from her former husband, is valid and binding upon the parties, and that by reason thereof she had a lawful right to marry Kimball, and that, as his widow, she is entitled to letters of administration upon his estate and to share in the proceeds thereof.

The provision of the Constitution of the United States, which declares that full faith and credit shall be given in each state to the judicial proceedings of every other state; and the acts of Congress, which declare that the judgments of the state courts shall have the same faith and credit in other states as they have in the state where they were rendered, have repeatedly been held not to prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered, nor into the rights of the state to exercise authority over the parties or subject-matter, nor an inquiry whether the judgment is founded on or impeachable for fraud; and that such a judgment may be inquired into, although the record states facts which would give the court jurisdiction. It is equally well settled that the judgment of a court of a sister state has no binding effect in this state, unless the court had jurisdiction of the subject-matter and of the person of the parties, and that want of jurisdiction may always be interposed against a judgment when it is sought to be enforced, or when any benefit is claimed for or under it. (*Borden* v. *Fitch*, 15 Johns. 121; *Andrews* v. *Montgomery*, 19 Johns. 162; *Shumway* v. *Stillman*, 4 Cow. 292; *Kerr* v. *Kerr*, 41 N. Y. 272.)

It will not be claimed that the judgment as originally entered was valid. It recited the service of the summons outside of the state; that the defendant had not answered, demurred, or in any manner appeared in the action. The defendant was a

resident of this state, and the courts of Dakota had never acquired jurisdiction of his person so as to have the power to order a judgment *in personam* against him. It is only upon the theory that he served an answer in that case, thereby submitting himself to the jurisdiction of that court, that it can be claimed that the courts of that state acquired jurisdiction to grant a final judgment against him. As we have seen, the plaintiff's attorney in that action made an affidavit upon which the judgment was entered, in which he stated that the defendant had not appeared, and had not answered or demurred. It is now claimed, however, that he had forwarded to the plaintiff's attorney a letter, of which the following is a copy :

" NEW YORK, <em>Oct.</em> 23, '90.

" Mr. HERMAN WINTERER :

" DEAR SIR.— In reply to the contents of paper served on me Oct. 15, 1890, by your representative, relative to my wife and children, I would say that my (wife) has sworn to matters untrue. For instance, this matter of desertion, this is surprising to me, as my wife personally ordered me from the house and stated that she never wished to see me again ; this was the fore part of September, 1888. I did as I was ordered, having no alternative, as I was living under her mother's roof. Now is it at all likely that a domesticated man (as my wife will tell you I was) would give up a good home, without good reasons for so doing ? It was only a short time after I left the house that they moved and took up another dwelling place, I never receiving any notification where I could see my children. I have meditated over this matter more than once, and have often wondered why it was done. It is now over a year ago since I saw my children last.

" In relation to my not providing for her, I would say that I have always given what I had, and very often more than I could afford. I am now carrying on the painting business, which was left to me by my father, who is now dead. When I came into possession of the business it was very much in debt. I have been trying ever since I took it to wipe out this burden, but as yet have not fully accomplished my aim and

desire. There were times when I was not doing very much in my business, and consequently could not provide as promptly as I would like to. My wife swearing that I did not provide for her the common necessaries of life simply tells an untruth. As to my drinking habits, I will admit that I have indulged a little too much at times, but now have got bravely over that, having not tasted it in over a year. As the father of my children, I was glad to hear of their existence, and hope in the near future of having the pleasure of seeing my own flesh and blood.

         " Very respectfully,

            "JAS. L. SEMON, 803 9 Ave. N. Y. C.

" CITY AND COUNTY OF NEW YORK, ss. :

   " Jas. L. Semon, being duly sworn, deposes and says that he is the writer of the foregoing letter, that he knows the contents thereof, and that it is absolutely true in every particular.

            "JAS. L. SEMON. [L. S.]

" Subscribed and sworn to before me }
   this 23d day of October, 1890.    }

[L. S.]   " JAS. T. CLARK, *Notary Public for Co. of N. Y.*"

Is this letter an appearance in the case or an answer to the plaintiff's complaint ? Under the Compiled Laws of the state of North Dakota it is provided by section 4914 that " the answer of the defendant must contain, *first*, a general or specific denial of each material allegation of the complaint controverted by the defendant or of any knowledge or information thereof sufficient to form a belief." Section 4921 provides that " every pleading in a court of record must be subscribed by the party or his attorney, and when any pleading is verified, every subsequent pleading, except a demurrer, must be verified also." By referring to the paper which is now claimed to be an answer, we find it dated at New York and addressed to the plaintiff's counsel individually. It is in form an ordinary letter commencing " Dear Sir " and closing with the words " Very respectfully " and is signed " Jas. L. Semon." It is not entitled in any action in any court

of any state. It does not purport to be a pleading in any action. It contains no specific denials of the allegations of the complaint which for a moment could be held to frame an issue requiring a trial. It is verified, but not in the form required by the statute. Semon nowhere swears that he is the defendant in the action or the person that was required to answer the complaint. This is the evidence upon which the surrogate was required to determine the validity of the judgment. Upon this evidence he found, as a fact, that the defendant did not appear in the action in person or by attorney. This finding has been affirmed by the unanimous judgment of the Appellate Division, and under the provisions of our Constitution " No unanimous decision of the Appellate Division of the Supreme Court that there is evidence supporting or tending to sustain a finding of fact &ast; &ast; &ast; shall be reviewed by the Court of Appeals." (Const. art. VI, § 9.) It is claimed, however, that this finding should be regarded as a conclusion of law and not as a determination of a question of fact. If we should so treat it we should not hesitate in sustaining the surrogate. The paper alluded to as an appearance or answer in the action could not be sustained in case it was assailed by a party. The plaintiff's attorney, anxious as he doubtless was to obtain jurisdiction of the defendant, never once thought of the letter as an answer, as is apparent from his affidavit of regularity upon which judgment was entered, and we cannot believe that it would have been received by the Dakota court and made the basis of amending the judgment had it not been by the consent of the parties. We then have a judgment of a court of a sister state entered against a resident of this state, in which there has been no personal service of process upon him in the jurisdiction of that state or appearance by him in the action by which the courts could acquire jurisdiction of his person. Such a judgment is void and of no force or effect in this state. (*Kerr* v. *Kerr*, 41 N. Y. 272; *People* v. *Baker*, 76 N. Y. 78; *O'Dea* v. *O'Dea*, 101 N. Y. 23; *Jones* v. *Jones*, 108 N. Y. 415; *Cross* v. *Cross*, 108 N. Y. 628; *De Meli* v.

*De Meli*, 120 N. Y. 485, 495; *Williams* v. *Williams*, 130 N. Y. 193, 199.)

The order appealed from should be affirmed, with costs.

PARKER, Ch. J. (dissenting).   The command of the Constitution of the United States, that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state," seems to call for a reversal of the order appealed from.

The order affirms the decision of the surrogate of Kings county, declaring, among other things, that a certain decree of divorce made by a court of general jurisdiction in the state of North Dakota was and is a nullity, the reason assigned being that the court did not acquire jurisdiction of the defendant therein, James L. Semon.   The provision of the Constitution quoted, said this court many years ago, means that the decree of a sister state, "must have the same faith and credit as it has in the state where it was rendered." (*Kinnier* v. *Kinnier*, 45 N. Y. 535.)   It must, however, be a judgment, and the parties and subject-matter must have been within the jurisdiction of the court; and it is open to attack collaterally as to the question of jurisdiction, as in *Kerr* v. *Kerr* (41 N. Y. 272) where a decree of the court in the state of Ohio recited an appearance of the defendant by a firm of attorneys, and the person for whom such appearance was noted was permitted to prove that she had no knowledge whatever of the proceeding, and that she neither appeared nor authorized any one to appear for her.

Semon, the defendant in the action that culminated in the judgment which is declared a nullity by the court below, was not a resident of the state of North Dakota, but was a resident of New York, and unless he submitted himself to the jurisdiction of the court of North Dakota by an appearance in the action the judgment of divorce was a nullity.   (*O'Dea* v. *O'Dea*, 101 N. Y. 23.)

The record presents an amended decree in that action which was in existence at the time these proceedings were instituted,

and upon the subject of the defendant's appearance the recital therein is as follows : " The defendant having appeared herein and answered and submitted himself to the jurisdiction of the court." When this amended decree was put in evidence, therefore, it was established presumptively that the court making the decree had acquired jurisdiction over the defendant by his appearance therein. It was a presumption rebuttable by proper evidence, if such existed, but in the absence of evidence tending to disprove the assertion of the decree that the defendant had appeared and answered and submitted himself to the jurisdiction of the court, it was conclusive. It was not attacked by evidence ; indeed, there was no evidence in the Surrogate's Court upon the subject except the papers which were submitted to the Dakota court on the motion made by the defendant Semon to amend the decree in respect to the recital referred to. If the judgment, when first entered, had been in the form in which it now is, as respects the recital, no one would have thought of challenging it, certainly not without direct evidence in possession of the attacking party tending to show that there was no appearance. But the motion to amend the judgment, made by the defendant in that action after the death of the intestate, Kimball, seems to have aroused suspicion that there was some collusion between Semon and his former wife and that his action was taken for her benefit, and not for his own, as he swears. There is, however, no proof that this suspicion is well founded, but if it were otherwise it could not affect the question before us, which is whether the Dakota court had before it competent evidence upon which to base the determination that it had jurisdiction of the defendant Semon at the time of the entry of the judgment, and authority to amend the decree as of that date, so that it should show such jurisdiction. The evidence upon which the court based its decision allowing the amendment is before us, and it cannot be said that it does not furnish support for the determination of the court.

The defendant Semon, who undertook to answer in that action within the time mentioned in the summons and subse-

quently insisted upon such an amendment of the decree as should recite the fact of his submission to the jurisdiction of the court, does not challenge its jurisdiction. That is attempted by a third party, who produces no other evidence than that submitted by Semon to the court in his petition praying for such an amendment as should recite the jurisdictional facts which existed when the decree was first made. No prior case can be found where it has been held that in such a situation an adjudication of personal appearance can be disregarded, when collaterally attacked by a third party, and the court, of its own head, hold otherwise.

The judgment of divorce was filed January 29th, 1891, and it recited that the defendant Semon had "failed to answer, demur or to make any appearance whatever as by the summons and the law required in such case, but instead thereof made default." If the decree were still in this form the right of the courts in this state to treat it as a nullity would be unquestioned. But about December 1st, 1896, the defendant in that action presented a petition to the court in which he stated, among other things, that eight days after the summons was handed to him in the city of New York, to wit, the 23d of October, 1890, he had prepared his answer to the charges alleged against him in the complaint in the action; had verified it before a notary public in the city of New York; that it was prepared without the aid or advice of an attorney at law, in order to avoid the expense thereof, and that he had mailed it to the attorneys for the plaintiff. He asserts that it was his intention by this answer to inform the court of his position and defense, and to submit himself to the jurisdiction of the court, and that he then believed such course to be sufficient and that his answer would be filed. Annexed to his petition, and made to form a part thereof, was a copy of the paper referred to and also an affidavit from one of the plaintiff's attorneys, admitting that he had received a letter of which the annexed was a copy, but asserting that it had been lost or destroyed, his omission to file it being due to the fact that it was not in the form of a pleading according to the statutes of that state.

Upon this petition and the papers annexed thereto an order was issued requiring the plaintiff in that action to show cause why the decree should not be amended *nunc pro tunc* as of January 26th, 1891, by striking therefrom the recitals to the effect that the defendant had failed to answer, demur or make any appearance whatever, and inserting therein the words, " the defendant having appeared herein and answered and submitted himself to the jurisdiction of the court."

The practice of North Dakota is similar to our own. Section 5341 of the Code provides that it shall not be necessary to entitle an affidavit in an action, but an affidavit without a title or with a defective title shall be as effectual for every purpose as if it were duly entitled, if it intelligently refer to the action or proceeding in which it was made ; this provision is similar to section 728 of our Code of Civil Procedure.

The letter which Semon insists was his answer and so intended, was verified, not in the precise form provided by our statute for the verification of pleadings, but nevertheless it declared that it was " absolutely true in every particular." The District Court of North Dakota held that it constituted a proper appearance and answer, ordered it to be filed as such and amended the decree *nunc pro tunc*, so as to recite the appearance of the defendant. The authority to grant the amendment was conferred by section 4938 of the Code of North Dakota, which provides that " the court may before or after judgment, in furtherance of justice, on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in any other respect, or by inserting other allegations material to the case, or when the amendment does not change substantially the claim or defense by conforming the pleading or proceeding to the facts proved." It will be observed that this section is substantially in the language of section 723 of our Code of Civil Procedure.

In granting the order to amend the decree *nunc pro tunc* upon the motion of the defendant in the action, the court

necessarily decided what the evidence before it asserted, viz., that the jurisdictional facts existed at the time the original decree was entered. The motion papers tend to show that such was the fact. It was not then disputed, nor has it since been questioned by evidence. The court having reached the conclusion that the recital in the original decree did not state the truth, but was a mistake, had the authority to amend the decree as of the date when it was first entered so that it should recite the appearance of the defendant. Authority to do so was expressly conferred upon it by the Dakota statute, which, as we have already observed, is substantially the same as our own.

Upon the facts stated would any one question the power of a court of original jurisdiction in this state to grant such an amendment? If granted, would the suggestion be entertained that the judgment could be attacked collaterally without other evidence than that upon which the court based its determination? Certainly not. And it should not be forgotten that it is our duty to give the same force and effect to this determination of our sister state that we would give to it were it made by our own courts.

It is suggested that the learned Surrogate's Court found as a fact that there was no appearance by the defendant Semon in that action and that we are concluded by his finding. The surrogate found the facts to which I have already referred, and because he saw fit to insert among his findings of fact his conclusion of law that the defendant did not appear, does not deny to us the right, nor relieve us from the duty, of determining what conclusion of law the facts really demanded.

I advise a reversal of the order.

All concur with HAIGHT, J., for affirmance (MARTIN, J., in result, on the ground that the question whether the defendant appeared in the action for divorce and submitted himself to the jurisdiction of the Dakota court was, under the evidence, a question of fact, and the finding of the surrogate cannot be reviewed by this court), except PARKER, Ch. J., who writes dissenting opinion.

Order affirmed.