WALKER WINSTON, Appellant and Respondent, *v.* LILLIE WINSTON,
Respondent and Appellant.

*Divorce — corroboration of the testimony of detectives — foreign decree granted without
service of process upon, or any appearance by, the defendant.*

The testimony of detectives to the effect that they had discovered a husband in
a house with a woman who had previously accompanied him there, under such
circumstances as clearly to prove illicit relations between them, is sufficiently
corroborated within the rule requiring the corroboration of such testimony as
a condition precedent to the entry of a decree dissolving the marriage contract,
by the statement of a witness who had charge of the apartments in one of
which the detectives swore that they found the husband and his companion that,
on the occasion in question, the detectives were there and were admitted to
such apartments in the manner testified to by one of them, and that the witness
afterwards heard "some disturbance," she identifying one of the detectives,
although she was not able to identify the others.

VAN BRUNT, P. J., and O'BRIEN, J., dissented.

A decree of divorce granted in a Territory of the United States without service
of process within the Territory on the defendant, who was at all times during
the pendency of the action a resident of the State of New York, or his appear-
ing in the action, is not binding upon him.

APPEAL by the plaintiff, Walker Winston, from so much of a
judgment of the Supreme Court, entered in the office of the clerk
of the county of New York on the 2d day of March, 1898, upon
the report of a referee, as adjudges and decrees that the complaint
should be dismissed upon the merits, and also from so much of said
judgment as adjudges and decrees that the court has no jurisdiction
to make any judgment disposing of the custody of the infant,
Lillian Winston, the child of the parties.

Also an appeal by the defendant, Lillie Winston, from that por-
tion of said judgment which adjudges and decrees " that the judg-
ment of divorce granted to the defendant against the plaintiff on
the 16th day of April, 1896, by the District Court of Noble county,
Oklahoma, has no force or validity within the State of New York
and did not dissolve the marital relations between the parties within
said State."

*John J. Crawford*, for the plaintiff.

*Henry W. Scott*, for the defendant.

McLaughlin, J. :

This appeal is from a judgment dismissing the complaint in an action for divorce. The allegations of the complaint were denied and the defendant set up in her answer that she had procured a divorce from the plaintiff in the Territory of Oklahoma. She also set up counter charges of adultery against him. Upon the trial it was established that the Oklahoma divorce was obtained without service of process on this plaintiff within that Territory, and also that he did not appear in the action and that he was at all times during the pendency of the action a resident of the State of New York. The decree, therefore, was without jurisdiction as to this plaintiff and by reason thereof not in any way binding upon him. (*Matter of Kimball*, 155 N. Y. 62; *Jones* v. *Jones*, 108 id. 415; *O'Dea* v. *O'Dea*, 101 id. 23; *Cross* v. *Cross*, 108 id. 628; *Bell* v. *Bell*, 4 App. Div. 527.)

The acts of adultery of the wife charged in the complaint consisted in her cohabitation with a person to whom she was married in the State of New York subsequent to the rendition of the judgment of divorce in Oklahoma. This court has held under similar circumstances that proof of such a relationship as that maintained by the defendant with her so-called second husband is sufficient to sustain a charge of adultery in an action of this character. (*McGown* v. *McGown*, 19 App. Div. 368.) The defendant, however, claims that she has established the allegations set out in her answer that the plaintiff himself has committed adultery which would entitle her if innocent to a divorce. In other words she claims to have made out a case within the provision of the 4th subdivision of section 1758 of the Code of Civil Procedure. The allegations of her answer in this respect were supported by the testimony of three private detectives. There being no other direct evidence of the plaintiff's guilt than that of these detectives, the plaintiff invokes the rule that a decree dissolving the marriage contract cannot be based upon the uncorroborated testimony of such persons. (*Moller* v. *Moller*, 115 N. Y. 466; *McCarthy* v. *McCarthy*, 143 id. 235.) We are, therefore, under the necessity of passing upon and determining whether the testimony of these private detectives is corroborated, and, if so, whether it is sufficiently corroborated to entitle it to credit.

Corroboration does not necessarily consist only of the testimony of witnesses who depose to each and every circumstance or fact testified to by the detectives. As was said in *Mott* v. *Mott* (3 App. Div. 535), we are to examine the record "to ascertain if there is to be found corroboration by facts or circumstances sufficient to justify the acceptance of what was deposed to" by these witnesses. In this case they testified that upon a certain night, specified by them, they followed the plaintiff and a woman, not the defendant, who went into a house situate on Sixth avenue, in the city of New York; that thereafter they, the detectives, discovered the plaintiff and the woman who had previously accompanied him under such circumstances as to clearly prove illicit relationship between them. It is not necessary to go over the details of the evidence in that respect. These witnesses prove beyond a doubt, if their testimony is to be accepted, the plaintiff's guilt. They are corroborated in material circumstances connected with their account of what took place in the house at the time in question. The corroboration consists of the testimony of the witness who had charge of the apartments, in one of which the detectives swore they found the plaintiff and his companion. This witness testified distinctly that on the occasion in question the detectives were there; that they were admitted to the plaintiff's apartments in the manner testified to by one of them; that the detective then said he wanted to see Mr. Winston; that she showed him the door of Mr. Winston's room; that she rapped upon the door and said "there is a gentleman to see you," and that she afterwards heard "some disturbance." She identified one of the detectives as one of the persons who were present on that occasion, although she did not identify the others. There is corroboration, therefore, of the material facts that the detectives were there; that their errand was to find Mr. Winston; that he was found and called from his room, and that there was a disturbance or noise "like men using angry words." It will also be observed that she heard the detectives or one of them say in the presence of the plaintiff that there was a woman in the room, although she could not testify that he actually heard that statement. The plaintiff did not deny the testimony of the detectives. He did not take the stand to refute it in any respect. If the testimony of these witnesses was false he could have easily and readily contradicted it. Not having done so,

" slight corroboration " was sufficient. (*McCarthy* v. *McCarthy supra.*)

The judgment appealed from must be affirmed, with costs.

Patterson and Ingraham, JJ., concurred; Van Brunt, P. J., and O'Brien, J., dissented.

Van Brunt, P. J. (dissenting):

It is conceded that a finding of adultery should not be based solely upon the evidence of detectives who are employed to obtain the proof of adultery; but that their testimony must necessarily be corroborated before it can be believed. And although it is stated in the case of *McCarthy* v. *McCarthy* (143 N. Y. 235) that slight corroboration is sufficient if the party accused fails to take the stand in his own behalf, we are not informed in that case as to the gravity of the corroborating evidence. It appears to consist of admissions contained in the 'letters of the defendant to the co-respondent. It seems to me exceedingly doubtful, in view of the history of legislation as to parties testifying in divorce cases, that the failure of an accused party to take the stand can make evidence credible which would otherwise be incredible and unworthy of belief; for the reason that it is only within a comparatively recent period that the parties to an action for divorce on the ground of adultery could be witnesses even upon their own behalf, except upon the subject of marriage.

In the case at bar there is not a single bit of evidence corroborating any material fact which was sworn to by the detectives, and they are contradicted as to much of the substantial evidence by the so-called corroborating witness. I think it is the first time in the history of proof of guilt upon an issue of adultery that evidence that a detective was seen in a certain place at a certain time is corroborative of the testimony of the detective that on that occasion he saw and heard certain things which nobody else saw or heard, and which there is positive evidence did not occur; because the corroborating witness states that what the detectives testified they heard in regard to the woman crying out, she did not hear; and she certainly was in a position to hear if any such thing occurred. The evidence of the detectives that the alleged woman made the outcry testified to is itself highly improbable, for it does not appear to me, as it did to the detective, that a woman caught in such a position as

the one in question was alleged to have been, would call in the neighborhood for the purpose of witnessing her shame.

It is even claimed in the prevailing opinion that the corroborating witness testified that there was a woman in the plaintiff's room. The only thing she testified to in corroboration was that she saw the detectives there. Now it seems to me that, if there is to be corroboration, it must be corroboration of some facts which are inconsistent with the plaintiff's innocence and not facts which are entirely consistent therewith. Corroborating the detectives as to the fact that they were there upon the night in question proves nothing; and to hold otherwise would be to sweep away the protection which parties have always heretofore received under the law against paid evidence. Detectives are employed to get evidence, and they always get it, many times, however, without any facts whatever to sustain it, which is the reason of the suspicion necessarily attaching to that class of testimony. It is a curious rule of evidence that proof which in itself is absolutely insufficient to prove a charge, becomes potent because it is not denied. That is the rule applied to the case at bar.

Judgment should be reversed.

O'BRIEN, J., concurred.

Judgment affirmed, with costs to the defendant.