Mary Oberlander, Petitioner, *v.* Louis Oberlander, Respondent.

Domestic Relations Court of New York, Family Court, New York County, January 12, 1943.

*William C. Chanler, Corporation Counsel (Alice E. Trubin* and *Charles C. Weinstein* of counsel), for petitioner.

*David H. Weiss* for respondent.

SIEGEL, J. The petitioner moves for an increase in the order for her support so that the award will cover the weekly allowance made by the Home Relief Bureau of the Department of Welfare of the City of New York for her maintenance. It is predicated upon the increased average earnings of the respondent from twenty dollars weekly to thirty-one dollars. The respondent not only opposes the granting of the increase, but urges the dismissal of the petition on the ground that respondent is released from all liability because he obtained a divorce in the State of Nevada in 1931, which decree was amended in 1941.

The parties were married in New Jersey on December 26, 1913. After residing in that State for about one year they moved to the city of New York where they lived together for about two years, then separated and have lived apart ever since. The only issue is a son, now twenty-seven years of age and presently in the United States Army. For about three months in 1931 the respondent was in Reno, Nevada. With the exception of that three months and until the present time, the respondent resided and has been employed within the city of New York as a bushelman. Previous to 1933, a proceeding was instituted on behalf of petitioner for nonsupport in the Family Court Division of the Magistrate's Court of the City of New York. When the present Domestic Relations Court was formed, a proceeding was brought by the petitioner against the respondent for support in the Family Division of this Court, which action is still pending. Respondent has been paying petitioner

various sums of money, pursuant to orders of this court, ranging from five dollars to nine dollars per week. The last order made by this court was on the 25th day of September, 1942, when respondent was directed to pay five dollars weekly, based on his average weekly earnings of twenty dollars, and the petitioner was referred to Home Relief for supplementary assistance. In 1931 the respondent instituted divorce proceedings against the petitioner in the State of Nevada, but the petitioner was not served personally with a summons and complaint in the Nevada divorce proceedings. At no time, did this petitioner appear or authorize a notice of appearance to be filed on her behalf in the Nevada divorce proceedings. On or about the 22nd day of December, 1931, a final decree was entered in this proceeding in favor of the respondent. Immediately thereafter the respondent left Nevada and never returned to that State at any time; he immediately came back to New York city and has resided here ever since. In 1939, respondent brought an action for separation in the Supreme Court of the State of New York, Kings County. He set up a valid and subsisting marriage and asked for a separation from bed and board on the ground that this petitioner had abandoned him. After a trial on the merits, the court, on April 23, 1940, dismissed the complaint for his failure to sustain the allegations. On October 10, 1941, the respondent entered in the Nevada State District Court a modified divorce decree based on an alleged general appearance by the petitioner on the 10th day of October, 1941, and decreeing that the findings and decree be deemed valid *nunc pro tunc* as of the day of the entry and filing of the original findings and decree, namely, the 22nd day of December, 1931.

The petitioner testified before me that she is unable to read or write any language, that she does not even know how to write her name, that she always has signed her name by making a cross mark and that at no time did she sign any paper purporting to be a notice of appearance in the divorce proceeding which had been instituted in Nevada. She also emphatically denied any visit by the respondent to her and repeatedly denied that she had at any time signed any paper in reference to the divorce action and she further denied having any knowledge of any divorce action by the respondent against her. On the other hand respondent testified that at some time in 1941, and he could not remember the date, two men, whom he could not identify, went to the home of the petitioner and there persuaded her to sign a paper purporting to be a notice of appearance in the divorce proceeding which he had brought in Nevada. He

then testified that he returned this paper to his attorney who forwarded the same to the court in Reno, Nevada, and on the strength of it the divorce decree of 1931 was modified in 1941 reciting the notice of appearance by the petitioner.

*Vernon* v. *Vernon* (262 App. Div. 431), decided July 2, 1941, held that where a wife procured a decree of divorce in the State of Nevada and the husband did not appear in the action, his subsequent appearance therein and the filing of a petition for modification of the decree rendered him subject to the jurisdiction of the Nevada court and the decree as modified was binding on him in this State. It is self-evident that what was attempted in this case was to pursue the course outlined in this opinion. This petitioner is ignorant. The demeanor of both petitioner and respondent and their manner of testifying, and the very facts that respondent does not remember the date when he went to see petitioner and cannot remember the name or address of either witness, that he has failed to account for his failure to have either testify in his behalf and has failed to produce any notary public who took the acknowledgment, if any such acknowledgment took place, leave this court to decide herein that no such paper was ever signed by the petitioner, and that a gross fraud has been perpetrated on the courts of Nevada. Hence it is that this court holds that there never was any general appearance or any other kind of appearance by the petitioner in the courts of Nevada. The full faith and credit provision of the Federal Constitution (art. IV, § 1) cannot be invoked to uphold the judgment of a sister State where (1) the adjudging tribunal had no jurisdiction over a person against whom judgment was pronounced, or over the subject-matter of the litigation, or (2) the adjudication of the foreign tribunal has been obtained by fraud.

In the *Matter of Kimball* (155 N. Y. 62-68) it was held that the full faith and credit provision of the Constitution has "* * * repeatedly been held not to prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered, nor into the rights of the state to exercise authority over the parties or subject-matter, nor an inquiry whether the judgment is founded on or impeachable for fraud; and that such a judgment may be inquired into, although the record states facts which would give the court jurisdiction. It is equally well settled that the judgment of a court of a sister state has no binding effect in this state, unless the court had jurisdiction of the subject-matter and of the person of the parties, and that

want of jurisdiction may always be interposed against a judgment when it is sought to be enforced, or when any benefit is claimed for or under it. (*Borden* v. *Fitch*, 15 Johns. 121; *Andrews* v. *Montgomery*, 19 Johns. 162; *Shumway* v. *Stillman*, 4 Cow. 292; *Kerr* v. *Kerr*, 41 N. Y. 272.)'' (See also *Kinnier* v. *Kinnier*, 45 N. Y. 535 [1871]; *Goldstein* v. *Goldstein*, 166 N. Y. S. 1074; *Fairchild* v. *Fairchild*, 53 N. J. Eq. 678.)

A judgment obtained by fraud, or rendered without jurisdiction, is no judgment and will be adjudged void when the fact is established, whether in the State in which the judgment was rendered or in a sister State where an action upon it is brought. It can always be shown that such judgment was fraudulently obtained or that the court pronouncing it lacked jurisdiction either of the person or the subject-matter of the action.

The United States Supreme Court held in *United States* v. *Throckmorton* (98 U. S. 61) that there is no question of the general doctrine that fraud vitiates solemn contract, doctrines, or even judgments.

Chief Justice FULLER in delivering the opinion of the majority of the court in *Cole* v. *Cunningham* (133 U. S. 107), after citing the provisions of the Constitution and statutes of the United States requiring that the decisions in each State should accord full faith and credit to the public acts, records and judicial proceedings of every other State, said: '' This does not prevent an inquiry into the jurisdiction of the court, in which a judgment is rendered, to pronounce the judgment   *   *   *   nor whether the judgment is founded in, and impeachable for, a manifest fraud.''

A court of one State may, when it has jurisdiction of the parties, determine the question whether a judgment between them, rendered in another State, was obtained by fraud and, if so, may enjoin the enforcement of it. (*Gray* v. *Richmond Bicycle Co.*, 167 N. Y. 348; *Davis* v. *Cornue*, 151 N. Y. 172, 179.)

The subject-matter of a divorce is an act or acts which constitute the cause of action.

Respondent's domicile and real residence has always been in the city of New York. Admittedly for the purpose of divorce only he remained in Nevada. At said time both parties were nonresidents of Nevada. Respondent was not present in Nevada at the time of the alleged filing of the notice of appearance. The purpose of respondent's trying to obtain the notice of appearance was an attempt to shift his responsibility for the support of his wife to the taxpayers of the city of New York. Testimony given before this court established that in the past

eight years over $1,500 has been paid out by the city of New York to the petitioner for her support.

The respondent also claims that the recital in the proceeding in Nevada of the facts intended to show jurisdiction may not be contradicted. As a matter of fact, the contrary has been held in *Thompson* v. *Whitman* (18 Wall. [U. S.] 457). In the case of *Williams* v. *North Carolina*, decided by the United States Supreme Court on December 21, 1942 (317 U. S. 287), the Court stated: " For it seems clear that the provision of the Nevada statute that a plaintiff in this type of case must ' reside ' in the State for the required period requires him to have a domicil, as distinguished from a mere residence in the State."

In the case at bar this court finds respondent was not domiciled in Nevada when he obtained the divorce in 1931. This court further finds that respondent has been and still is domiciled in the State of New York. In the separation action brought by the respondent in the Supreme Court of the State of New York in 1939, the court found him to have been a resident of the State and city of New York from the date of his marriage in 1913. The court further found that both respondent and petitioner herein were husband and wife. In *Williams* v. *North Carolina* (*supra*) the majority opinion limits the enforcement in one State of a decree rendered in another by invoking the full faith and credit clause of the Constitution, to the rights of the domiciliary of the State. It must be borne in mind that the case came before the Supreme Court on an issue of whether North Carolina could convict the petitioners of " bigamous cohabitation " where they had obtained a decree of divorce while domiciliaries in Nevada, and thereafter remarried in Nevada. The court decided that a State has the power to adjudicate the rights of its domiciliaries. The court, however, did not decide that a State could impose its decree upon the domiciliaries of another State, that is, upon the rights of the divorced spouse who was not a domiciliary of the State where the divorce was obtained. That issue was not presented and was not passed upon by the Supreme Court.

The respondent in 1931 was a temporary resident of Nevada and, in fact, neither the petitioner nor he was ever a domiciliary of that State. In the majority opinion rendered in *Williams* v. *North Carolina* (*supra*) we find the following being said by Mr. Justice DOUGLAS: " But the question for us is a limited one. In the first place, we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts

of one state to a resident as distinguished from a domiciliary is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada.''

In the opinion the Supreme Court relied upon *Bell* v. *Bell* (181 U. S. 175), which ruled that a decree of divorce was not entitled to full faith and credit when it had been granted upon service by publication in a State where neither party was domiciled.

Thus a decision in the above case must be deemed to be confined to the facts which appeared before the court and limited to such facts. The respondent urges that although the divorce decree obtained in 1931 might have been invalid in the State of New York, the subsequent notice of appearance validated the modified decree. The respondent relies upon the case of *Lynde* v. *Lynde* (162 N. Y. 405). The difference between the case just cited and the case at bar is clear. In the *Lynde* case the matrimonial domicile was in New Jersey. The husband left the wife there and came to New York and she, remaining in New Jersey, brought an action for divorce in that State on a ground recognized by that State. The husband did not contest the decree and later remarried in New York State. After the entry of the decree an application was made by the wife to amend said decree to include the provision for alimony. This application was contested by the husband on the merits, setting forth that, relying on the decree entered without alimony, he had assumed new obligations by marrying again and that the amendment of said decree subsequent to his new marriage would work a great hardship on him. The New Jersey court entered a judgment for back alimony and also provided for future payments. Thereafter, the wife brought an action in New York to enforce the judgment for alimony and also to enforce the future payments. The husband, for the first time, set up the invalidity of the New Jersey decree. The opinion of the Court of Appeals reveals that the court did not pass upon the validity or invalidity of the divorce decree, but merely enforced the money judgment entered in New Jersey as that part had been contested by the husband in that State on the merits. He appeared in New Jersey generally. The Court of Appeals refused to enforce the decree as to future payments. As can be seen from the foregoing, the *Lynde* case is not in point. The case was appealed to the Supreme Court and in *Lynde* v. *Lynde* (181 U. S. 183, on p. 186), Justice GRAY says: '' The husband as the record shows having appeared gen-

erally in answer to the petition for alimony in the Court of Chancery in New Jersey, the decree of that court for alimony was binding upon him. *Laing* v. *Rigney,* 160 U. S. 531.''

The filing of the alleged notice of appearance in 1941 after the entry of an invalid divorce decree cannot cure such invalidity. A decree cannot be amended *nunc pro tunc* in order to cure an invalidity. In the case *Merrick* v. *Merrick* (266 N. Y. 120 [1934]), the Court of Appeals held that '' An order may not be made *nunc pro tunc* which will supply a jurisdictional defect by requiring something to be done which has not been done.'' In this case a decree entered in 1920 was attempted to be modified *nunc pro tunc* as of 1925 in order to validate a subsequent marriage. Certainly if it is against the public policy of the courts of this State to modify a decree *nunc pro tunc* for the purpose of validating a subsequent marriage, the courts would not recognize the crude attempt made in the case at bar to validate a foreign decree involving domiciliaries of this State.

In 1918 our courts refused to recognize a divorce obtained by the husband in Maine upon service by publication, the last matrimonial domicile of the parties being in New York, even though the wife appeared in the Maine suit for the purpose of challenging the jurisdiction there and, being defeated on that point, a decree of divorce was entered against her by default. The court concluded that the husband and not the taxpayers was responsible for her support. (See *Commissioner of Public Charities* v. *Patterson,* 169 N. Y. S. 316.)

In 1936, in *Shannon* v. *Shannon* (274 App. Div. 790), our courts refused to recognize a foreign divorce decree although the notice of appearance therein had been filed by the wife, the facts being similar to those above, in that the parties while residents of the State of New York attempted to procure a dissolution of their marriage by the institution of divorce proceedings and the filing of a notice of appearance in a foreign country.

If the respondent is right, then a husband can leave the domicile of both husband and wife in the State of New York and proceed against her in another State for a divorce by having the official notice sent through the mails to her, advising her that her failure to appear in answer to the divorce suit brought by him will be taken to be a confession by her of the allegations of her husband's complaint. She may lack the means with which to proceed to the distant State to defend said action, and thus be compelled to let the notice go unanswered. The result would be that she would become a public charge and the city of New York would be called upon to support her. That describes the attempt which this respondent has made to throw off the burden of sup-

porting his wife in the instant case by making the city of New York take his place and support her. There is no maxim of the law more firmly established than the requirement that a husband support his wife. It is an obligation created by statute as well as by moral law. It is the duty of this court to enforce the statute. This decision should have the effect of preventing abandoned wives from becoming public charges when the husbands are earning sufficient to support them, and when the wives are unable to earn any sum whatsoever.

The order heretofore made requiring the respondent to pay the sum of five dollars per week is modified and increased, requiring the respondent to pay the sum of nine dollars per week commencing as of the 15th day of January, 1943, and, the arrears having been fixed by consent at five dollars on the 8th day of January, 1943, the respondent is ordered and required to pay the sum of one dollar per week on the arrears until paid in full commencing on the 15th day of January, 1943.